825 A.2d 1096

Steven Fritz FACON

v.

STATE of Maryland.

No. 30, Sept. Term, 2002.

Court of Appeals of Maryland.

June 13, 2003.

436

438

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

Steven Fritz Facon was convicted by a jury in the Circuit Court for Prince George's County of two counts of the common law offense of robbery with a dangerous weapon, and the statutory offenses of first degree assault and use of a handgun in the commission of a felony in violation of Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, §§ 12A–1, 36B(d) (current versions at Maryland Code (2002) §§ 3–202, 4–204 of

the Criminal Law Article).[1] Facon contends on appeal that the trial court erred in denying his motion to suppress his confession. In his petition for writ of certiorari, Facon raises the following questions for our review:

1. Whether the twenty-four hour period following arrest, during which police are required to present an arrestee to a court commissioner, begins only when the arrestee enters the prosecuting jurisdiction, or includes that period of time following arrest in a neighboring jurisdiction.

2. Whether a delay in presentment solely for the purpose of conducting an all-night interrogation is an "unnecessary" delay.

3. Whether the circuit court erred in denying Mr. Facon's motion to suppress a confession, under the totality of the circumstances, where police held him incommunicado (denying his request to make a telephone call), interrogated him throughout the night in tag-team fashion, promised a recommendation to the State's Attorney, and delayed presentment until 36 hours after arrest in order to obtain a statement.

4. Whether the taking of property after the abandonment of a failed attempted robbery constitutes an armed robbery.

*Facon v. State,* 369 Md. 570, 801 A.2d 1031 (2002).

Maryland Rule 4–212(e) provides:

(e) *Execution of warrant—Defendant not in custody.* ... The defendant shall be taken before a judicial officer of the District Court without unnecessary delay and in no event later than 24 hours after arrest or, if the warrant so specifies, before a judicial officer of the circuit court without unnecessary delay and in no event later than the next session of court after the date of arrest. The court shall process the defendant pursuant to Rule 4–216 and may

---

1. At sentencing, the court merged the assault convictions into the armed robbery convictions, and sentenced Facon to two concurrent terms of twenty-five years' imprisonment, without parole, for each armed robbery conviction, and concurrent terms of twenty years, the first five years without parole, for each handgun conviction.

make provision for the appearance or waiver of counsel pursuant to Rule 4–215.

This case requires this Court to assess the effect of extraterritorial presentment delay upon the defendant's subsequent oral statement to the police.

■ We shall hold that the requirement of Maryland Rule 4–212(e) that a defendant shall be taken before a judicial officer of the District Court without unnecessary delay begins only when the arrestee enters the prosecuting jurisdiction, and for purposes of determining whether the rule has been violated, that period of time following arrest in a neighboring jurisdiction is not included in the time calculation. We shall also hold, however, that extraterritorial custody may be considered in the totality of the circumstances in assessing the voluntariness of a statement.

## I. Background

A man, later identified as petitioner, entered a convenience store during the early morning hours of August 22, 1999, and approached the counter with a bag of chips. After asking the price of the chips, the man pulled up his shirt to reveal a gun and demanded that the store clerk "open the register." When the clerk, due to nervousness, was unable to comply, the man drew the gun and pointed it at both that clerk and an additional clerk who had emerged from the back of the store. The man demanded that the other clerk open the register, stating, according to the second clerk's testimony: "Open the register or I'll blow your heads off." Neither clerk was able to open the register. The man then put away the gun, grabbed a pack of cigarettes, and exited the store. The man did not pay for the cigarettes. One of the clerks testified that no attempt was made to stop the man because he "had a gun."

Based on the ensuing investigation, authorities in Prince George's County issued a warrant for petitioner's arrest. He was arrested on the evening of August 31, 1999, in the District of Columbia. Petitioner waived extradition to Prince George's County and arrived at Central Processing at about 10:00 p.m.

on the evening of September 1, 1999. He had been awake since 5:30 that morning.

Two officers, Officer Craig and Officer Olds, met petitioner at Central Processing and brought him to an interview room in the Robbery Division. The interview room was roughly eight feet by ten or twelve feet, carpeted and without windows. Petitioner sat at a table, and was intermittently handcuffed to a ring on the wall. Except for breaks to have photos taken and to use the restroom, petitioner remained in the interview room from shortly after 10:00 p.m., September 1st, until his confession at 7:14 a.m., September 2nd.

Both officers testified that petitioner appeared alert, coherent, and in good physical condition throughout the night. Petitioner, 39 years old, testified at the suppression hearing that he had attended some college and that he understood what the officers were saying to him during the interrogation. During the course of the night, petitioner was offered and accepted coffee, soda, sandwiches, and cigarettes. When initially placed in the interview room, petitioner requested that the door be left ajar, which was done. Petitioner also requested to make a phone call, but this request was not granted. Petitioner was permitted to make a phone call at 9:00 a.m. the following morning, after he had made his confession. Petitioner testified that he also requested to speak to an attorney. Both Officer Craig and Officer Olds contradicted this testimony. At the outset of the interview, petitioner was not read his *Miranda* rights nor was any mention made initially of petitioner's rights to an attorney, to remain silent, or to prompt presentment before a judicial authority.

Officer Craig spoke first with petitioner. From 10:30 p.m. until 11:55 p.m., he and petitioner discussed petitioner's life and family. This conversation included petitioner's drug problems and prior arrests. At some point Officer Craig showed petitioner a waiver of rights form. Petitioner responded that he did not "want to sign anything right now." Officer Craig put the waiver form away and then asked petitioner, "do you want to discuss this at all right now?" According to the

officer, petitioner responded, "I'll discuss it but I don't want to write anything, I don't want to make a statement." Rather than discuss the incident, however, the two then further discussed petitioner's drug problems, as well as a treatment program which petitioner had been involved with previously in prison.

From 11:44 p.m. until 12:22 a.m. petitioner was left alone in the interview room. Officer Craig returned, and talked to petitioner for roughly another two and a half hours, about petitioner's family, drug problems, and desire to enroll in a drug treatment program. Petitioner was left alone again from 2:55 a.m. until 3:20 a.m., when he was taken to use the restroom. Officer Craig then spent a final hour speaking to petitioner in the interview room before leaving to get Officer Olds at 4:25 a.m. Officer Craig testified that he wanted petitioner to "see a fresh face, talk to somebody else."

Officer Olds entered the interview room at 4:40 a.m. Like Officer Craig, Officer Olds discussed general matters about petitioner's life. Asked during trial whether he had made petitioner any promises, Officer Olds acknowledged that he offered to tell the State's Attorney about petitioner's desire to enter a drug treatment program. Officer Olds stated that he was "making no promises," but said he "would absolutely relay that [petitioner] has a bad narcotic habit to the state's attorney ... and that was about the best [the officer] could do."

From 5:55 a.m. until 6:35 a.m. there was a break in the conversation during which petitioner was photographed. Upon resuming at 6:35 a.m., Officer Olds stated they were "done" talking about petitioner's background, and began to review the evidence against petitioner. Officer Olds acknowledged that petitioner "was getting tired," but claimed that petitioner then began "to ask about what does the statement entail." The officer stated that, "a statement is a statement." Petitioner repeated what he had told Officer Craig; he didn't want to write anything down. Officer Olds told petitioner, "well you have to sign a waiver form or we don't get into the statement." It was 7:08 a.m. when petitioner agreed to exe-

cute the waiver of rights form; it was completed at 7:14 a.m. On cross-examination, Officer Olds acknowledged that it was "normal practice" to advise suspects of their rights prior to interviewing them.

Upon signing the waiver form, petitioner began to "weep." Officer Olds told petitioner that signing the form was not an admission of guilt, but simply indicated a willingness to cooperate. Once the waiver form was complete, petitioner confessed to robbing the convenience store, stating that he was under the influence of narcotics at the time. The confession was concluded at 7:45 a.m. At 9:00 a.m., petitioner was permitted to make a phone call, and at 10:30 a.m., petitioner was brought before a commissioner.

Prior to trial, petitioner moved to suppress the oral statement he gave to police while in custody. The motions court denied the motion to suppress. Specifically, the court believed the police officers rather than petitioner and concluded that petitioner did not ask for an attorney. The court also concluded that Officer Olds' statement that he would speak to the State's Attorney on petitioner's behalf did not constitute an improper inducement. The court ruled that petitioner's statement was knowing and voluntary.

Petitioner was tried before a jury in the Circuit Court for Prince George's County. Over petitioner's objection, the State introduced evidence of petitioner's oral statement during its case in chief. Officer Olds testified that petitioner had admitted to police that he had robbed the convenience store on August 22, 1999.

Petitioner noted a timely appeal to the Court of Special Appeals. That court affirmed, holding, *inter alia,* that the trial court did not err in denying the motion to suppress and that the State had presented sufficient evidence to prove the offense of robbery.[2] We granted Facon's petition for writ of

---

2. Although the Court of Special Appeals affirmed both convictions for armed robbery, it vacated one of the two sentences imposed. Both robbery convictions were based on the same incident in the conve-

certiorari. *Facon v. State,* 369 Md. 570, 801 A.2d 1031 (2002). We shall reverse.

## II. Presentment Delay

 Petitioner argues that the interrogating officers violated Rule 4–212(e) when they delayed unnecessarily petitioner's presentment to a judicial officer until 36 hours had elapsed from the time of his arrest in the District of Columbia and where the purpose of the delay was to interrogate petitioner. Petitioner argues that the Rule's requirement of prompt presentment is triggered when a person is arrested on Maryland charges, even if that person is in the custody of another jurisdiction. Petitioner also argues that the Circuit Court erred in denying suppression of petitioner's confession because it was involuntary under the Maryland and Federal Constitutions and under Maryland nonconstitutional grounds.

 Petitioner's argument that his extraterritorial custody violated the requirement of prompt presentment requires us to interpret Maryland Rule 4–212(e). The paramount rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *See e.g., Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000). We begin our analysis by looking at the plain meaning of the words of the statute. *See Whiting–Turner Contracting Co. v. Fitzpatrick,* 366 Md. 295, 301, 783 A.2d 667, 670 (2001); *Harris v. State,* 353 Md. 596, 606, 728 A.2d 180, 184 (1999). When the words are clear and unambiguous, there is no need to search further. *See Whiting–Turner,* 366 Md. at 301, 783 A.2d at 670; *Degren v. State,* 352 Md. 400, 417, 722 A.2d 887, 895 (1999).

 When the language of the statute is ambiguous, we look to the intent of the Legislature as evidenced in the

---

nience store, but reflected separate victims (the two clerks). The dual sentences were impermissible because "[w]hen a defendant is convicted of more than one qualifying crime of violence as the result of a single incident, only one sentence may be imposed under [Art. 27,] § 643B(c)." *Facon v. State,* 144 Md.App. 1, 49, 796 A.2d 101, 129 (2002) (citing *Jones v. State,* 336 Md. 255, 262, 647 A.2d 1204, 1207 (1994)).

legislative history or other sources extraneous to the statute itself. *See id.; Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590, 594 (1992). We cannot modify an unambiguous statute by adding or removing words to give it a meaning not reflected by the words the Legislature chose to use, nor "engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. NationsBank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001); *Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n of Md.,* 361 Md. 196, 204, 760 A.2d 1087, 1091 (2000). Nor may we render, through our analysis, any portion of the statute superfluous or nugatory. *See Taylor,* 365 Md. at 181, 776 A.2d at 654–55; *Blondell v. Baltimore City Police Dep't,* 341 Md. 680, 691, 672 A.2d 639, 644 (1996). It is clear, however, that the statute must be given a reasonable interpretation, "not one that is illogical or incompatible with common sense." *Whiting–Turner,* 366 Md. at 302, 783 A.2d at 671; *State v. Brantner,* 360 Md. 314, 322, 758 A.2d 84, 88–89 (2000).

Petitioner was arrested on the evening of August 31, 1999, and he was not presented to a judicial officer until 10:30 a.m. on September 2, 1999. According to petitioner, this span of approximately 36 hours constituted "gross noncompliance" with Maryland Rule 4–212(e), and such a violation, in and of itself, rendered petitioner's statement inadmissible.

Petitioner's argument is incorrect for two reasons. First, in calculating the time of custody prior to presentment under Rule 4–212(e), petitioner includes improperly petitioner's extraterritorial custody. Second, petitioner's belief that the delay in presentment was sufficient, standing alone, to require suppression of his statement ignores the Legislature's mandate in enacting § 10–912 of the Courts Article, that no such *per se* rule of suppression is permitted.

This Court has not previously considered the extraterritorial reach of Rule 4–212(e). Rule 4–212(e) makes no reference to the effect of the arrest occurring outside of this State by officers of another state. *Compare* D.C.Super. Ct.Crim. R. 5(a) (2002) (specifying that District of Columbia presentment

rule applies only to "[a]n officer within the District of Columbia making an arrest"). The statutory language requires simply that presentment occur "after arrest." Petitioner claims that the clock begins to run, for purposes of calculating delay under the rule, whenever and wherever the arrest occurs. This is not a reasonable interpretation of the Rule.

Rule 4–212 requires that presentment be made before "a judicial officer of the District Court." The "District Court" referred to in the Rule is the District Court of Maryland. Thus, under a plain reading of the statute, presentment of the defendant to a court in a foreign jurisdiction would not satisfy the Rule. Petitioner's reading of the statute would require a defendant arrested anywhere in the country to be transported to this State within, at the latest, 24 hours. Even ignoring the practical impossibility of such a feat in many cases, such an interpretation would grant a defendant the ability to prevent compliance with the rule simply by refusing to waive extradition from the foreign jurisdiction. Such a construction leads to an absurd result, one which neither the Legislature nor this Court could have intended.

Furthermore, this Court's interpretation of the purpose of Rule 4–212(e) belies the theory that it may be violated by extraterritorial custody. We have indicated that the purpose of prompt presentment is to provide a defendant with a full panoply of safeguards. *See Williams v. State,* 375 Md. 404, 422, 825 A.2d 1078, 1088 (2003); *Johnson v. State,* 282 Md. 314, 321, 384 A.2d 709, 713 (1978). The principle protections afforded by the Rule include:

> "a neutral judicial officer must determine whether sufficient probable cause exists for the continued detention of the defendant. . . . [A] commissioner at the initial appearance [will] make a determination of the defendant's eligibility for pretrial release. . . . [T]he initial appearance [will] inform the accused of every charge brought against him and . . . inform him of his right to counsel, and, if indigent, to have counsel appointed for him. . . . Further, where the defendant has been charged with a felony over which the District Court lacks subject matter jurisdiction, the commissioner

conducting the initial appearance must notify the accused of his right ... to request a full preliminary hearing. If such a request is forthcoming, the commissioner must assign a date and time for the preliminary hearing.... Finally, where the crime is one within the District Court's jurisdiction, the presiding judicial officer must fix the date for trial."

*Johnson,* 282 Md. at 321–22, 384 A.2d at 713–14.

Although this Court has not had the occasion to consider whether Rule 4–212 has extraterritorial effect, the Court of Special Appeals addressed the same issue in *Davis v. State,* 42 Md.App. 546, 559–60, 402 A.2d 77, 84–85 (1979), *cert. denied,* 286 Md. 746 (1979). There, the court considered the reach of M.D.R. 723, the predecessor of 4–212(e) and held that when a person is within the custody of a Maryland officer outside of Maryland, M.D.R. 723 is inapplicable. Writing for the panel, Judge Melvin explained:

"M.D.R. 723a obviously has no extraterritorial effect as a matter of law. Its provisions do not purport to tell law enforcement officers outside the State what to do—whether the officers be employed by Maryland or some other state. When a Maryland officer obtains custody of a person outside of Maryland his duties with respect to that person are, while he is still without Maryland's boundaries, not governed at all by M.D.R. 723a because, as we said, the rule has no extraterritorial effect. Whatever duty the custodial officer may have to return his prisoner to Maryland for prompt presentment to a Maryland judicial officer derives not from M.D.R. 723a but from the common law or from constitutional considerations of due process, or from the implications of the Uniform Criminal Extradition Act (Md. Ann.Code, 1957, 1978 repl. vol., Art. 41, § 16–43). None of these sources provide a *per se* exclusionary sanction for their violation such as the Court of Appeals has imposed [in *Johnson*] for the violation of M.D.R. 723a."

*Id.* at 559, 402 A.2d at 84–85.

■ The Court of Special Appeal's interpretation of M.D.R. 723a applies to Rule 4–212(e) as well. Most of the

accused's protections under the Rule relate to an application of Maryland law. The assessment of probable cause for a Maryland offense, advisement of penalties, right to counsel under Maryland law, as well as federal law, and pretrial release determinations are uniquely Maryland considerations and could not be performed adequately by a foreign judicial officer. Rule 4–212(e) does not have extraterritorial effect.

 We hold that the prompt presentment requirement under the Rule is not triggered where the defendant is held in custody outside of this State, absent evidence that officers of this State were working in conjunction with the other jurisdiction for purposes other than to secure extradition. In the instant case, the record does not reflect any collusion between the District of Columbia authorities and Prince George's County authorities apart from arranging for extradition. Petitioner was not interrogated until he arrived in Prince George's County. The delay in presenting petitioner therefore consisted of roughly 12 hours, commencing when Maryland State Police took custody of petitioner in Prince George's County.

 There is a noteworthy, albeit narrow, exception to our holding that extraterritorial delays will not begin the running of time under Rule 4–212(e). As both Federal and other state courts have recognized, the police cannot avoid the requirement of the presentment rule through collusion with a foreign jurisdiction. *See United States v. Alvarez–Sanchez,* 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *Anderson v. United States,* 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943); *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984).[3] Where it is demonstrated that officers from this

---

**3.** In *State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397, 401–02 (1984), the Supreme Court of Appeals of West Virginia applied that state's presentment rule to an arrest made in Virginia. The state had argued that the rule had no extraterritorial application. The court held that the rule applied, under the facts of the case, because the West Virginia police had been working with the Virginia police during the arrest and interrogation of the accused, and the delay in presentment was prompted by the West Virginia officers. *See id.* at 402. In the case *sub judice,* such collaboration did not occur.

State are working in collaboration with the other jurisdiction, interrogating a defendant prior to his transfer, the presentment requirement may apply to the officers' activities. *See Alvarez–Sanchez*, 511 U.S. at 359, 114 S.Ct. at 1604, 128 L.Ed.2d 319 (stating that a confession obtained through collusion by state and federal agents to avoid presentment requirement would be suppressed).

Petitioner argues that whether the presentment delay is considered to be 36 hours or 12 hours, because it was unnecessary and a "gross violation" of Rule 4–212(e), it warranted suppression of his oral statement. The Legislature, however, has made it clear that a delay in presentment, regardless of its length or purpose, will not result in automatic suppression of a confession.

This State required police officers to present an accused promptly before a judicial officer prior to the adoption of the present Rules. *See Kirk v. Garrett*, 84 Md. 383, 407, 35 A. 1089 (1896); *Twilley v. Perkins*, 77 Md. 252, 265, 26 A. 286, 19 L.R.A. 632 (1893). *See also* Kauffman, *The Law of Arrest in Maryland*, 5 Md. L.Rev. 125, 130–31 (1941). The requirement was formally enacted statewide in 1971 with the adoption of M.D.R. 709 by this Court.[4]

In *Johnson v. State*, 282 Md. 314, 384 A.2d 709 (1978), we interpreted the requirement of prompt presentment to be mandatory. Further, we stated that statements obtained in violation of the Rule were *per se* inadmissible. *See id.* at 328–29, 384 A.2d at 717. A majority of the Court held:

> "that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723a, [the predecessor of Rule 4–212(e),] is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief."

---

4. M.D.R. 709 was re-codified without substantial alteration as M.D.R. 723a (1977), and subsequently included in Maryland Rules 4–212(e) and (f).

*Id.*, 384 A.2d at 718. In so holding, the Court followed the opinion of the Supreme Court in *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The Supreme Court enunciated the *McNabb–Mallory* Rule as a non-constitutional exercise of the Court's authority to administer the federal courts. *See McNabb*, 318 U.S. at 341, 63 S.Ct. at 613, 87 L.Ed. 819. The Majority in *Johnson* recognized that this Court was not bound by the *McNabb–Mallory* Rule, and that "the vast majority of state courts passing on the question [had] rejected *McNabb–Mallory* outright, opting instead for a traditional due process voluntariness test of the admissibility of confessions." *Johnson*, 282 Md. at 324, 384 A.2d at 715 (citing cases). Nonetheless, we elected to follow the Supreme Court.

The *per se* rule announced in *Johnson* remained the law in this State for only a few years. In 1981, responding to this Court's subsequent decision in *McClain v. State*, 288 Md. 456, 419 A.2d 369 (1980) (applying the *per se* rule of *Johnson* to suppress a statement made 24 hours and 12 minutes after arrest), the Legislature enacted Acts 1981, ch. 577, codified in the Maryland Code (1973, 1984 Repl.Vol.), as § 10–912 of the Courts and Judicial Proceedings Article:

> (a) *Confession not rendered inadmissible.*—A confession may not be excluded from evidence solely because the defendant was not taken before a judicial officer after arrest within any time period specified by the Maryland District Rules.

> (b) *Effect of failure to comply strictly with Maryland District Rules.*—Failure to strictly comply with the provisions of the Maryland District Rules pertaining to taking a defendant before a judicial officer after arrest is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession.

The enactment of § 10–912 eliminated the *per se* rule, bringing this State in conformity with the majority of other states. *See Woods v. State*, 315 Md. 591, 613–14, 556 A.2d 236, 247

(1989). Whether petitioner faced a delay of 12 hours, 36 hours, or four days, a delay in presentment will not be sufficient grounds, standing alone, to suppress his statement, absent an analysis by the court into the statement's voluntariness.

Recently, this Court examined the interaction between Rule 4–212(e) and § 10–912. *See Williams v. State,* 375 Md. 404, 825 A.2d 1078 (2003). In *Williams,* we examined the effect of an extended delay upon the voluntariness of the defendant's confession. Examining both the history of the Court's rule and the Legislative intent of the subsequent statute, we explained:

> "[Section] 10–912 was a reaction to *Johnson* and *McClain,* both of which applied a *per se* rule of exclusion for confessions taken more than 24 hours after arrest, without regard to the reason for the delay. The statute did not attempt to modify the substantive requirement of the Rule, that defendants be presented without unnecessary delay and, in any event, within 24 hours. Nor did it seek to change our conclusion that the Rule was mandatory and not merely directory. The goal of the statute was simply to eliminate a Rule violation as an independent ground, separate from voluntariness, for rendering a confession inadmissible. The Legislature obviously recognized the important purpose of a prompt presentment requirement, however, for it called special attention to a violation of that requirement as a factor to be considered in determining voluntariness. No other factor bearing on voluntariness was specifically mentioned; nor did the Legislature attempt to prescribe the weight to be given to it."

*Williams, Id.* at 428, 825 A.2d at 1092. Judge Wilner, writing for the Court, in assessing voluntariness of a confession, discussed the weight which should be accorded to a delay in presentment. Any violation of Rule 4–212 must be given "special weight" because, "when the right it is designed to protect is transgressed, there may be no practical way of calculating the actual effect of the transgression." *Id.* at 430, 825 A.2d at 1093. In conclusion, this Court held:

"that any deliberate and unnecessary delay in presenting an accused before a District Court Commissioner, in violation of Rule 4–212(e) or (f) must be given *very heavy weight* in determining whether a resulting confession is voluntary, because that violation creates its own aura of suspicion."

*Id.* at 434, 825 A.2d at 1095. (emphasis added). *Williams* mandates that any unnecessary delay must be given very heavy weight.

In the instant case, after petitioner's arrest in the District of Columbia, he arrived in Maryland at the Prince George's County police station at about 10:00 p.m. on the evening of September 1, 1999. He was not presented to the District Court Commissioner until 10:30 a.m. on the morning of September 2, 1999. The delay was solely for the purpose of interrogation.

 Petitioner was not informed of his right to prompt presentment before a judicial officer and he did not waive that right.[5] Although he was presented within 24 hours after he arrived in Maryland, the mandate of the Rule was violated. At the suppression hearing, defense counsel argued, *inter alia*, that the rule requires that an accused be taken before a judicial officer without unnecessary delay and that such delay is a factor in considering the voluntariness of any statement. In finding the confession voluntary by a preponderance of the evidence, the motions hearing judge reasoned:

"... it is clear that Mr. Facon was in police custody for a prolonged period of time, the reality is, what a crucial time frame is and the crucial time frame focuses in the Court's observation upon the time frame he spent with Detective Olds. [Defense counsel] pointed out that this was a tag team approach. Well, that is not uncommon. Clearly I agree

---

5. We recognize that petitioner was arrested well before the *Williams* case was decided and the police did not have the benefit of our discussion in that case of an explicit waiver by the accused of his or her right to presentment without unnecessary delay. We also recognize that the trial judge did not have the benefit of our discussion in that case as to the weight any rule violation must receive.

with [defense counsel's] assessment, the police want to get a statement from the defendant, that is routinely what they try to do in cases of this nature."

The trial judge, in considering whether petitioner's confession was voluntary, did not give *any* weight to the time petitioner was in custody except for the period of time petitioner spent with the interrogating officer, Officer Olds. Petitioner is entitled to have the court consider the rule violation and to have the court accord such violation very heavy weight in considering whether petitioner's confession was voluntary.

Petitioner presents constitutional and common law based arguments as grounds to suppress his confession. Inasmuch as we shall reverse the judgments of convictions and remand for a new trial, petitioner will be entitled to an evidentiary hearing on his motion to suppress his confession and he may present any evidence he deems relevant. Accordingly, we do not reach the constitutional questions or the Maryland nonconstitutional grounds asserted by petitioner at this time.

### III. Sufficiency of Evidence for Robbery Conviction

Petitioner presents a legal question which we shall address for the guidance of the trial court on remand. Petitioner asks this Court to determine whether the taking of property after the abandonment of a failed attempted robbery constitutes an armed robbery.

Petitioner contends that the taking of the cigarettes, after an effort to rob the cash register was unsuccessful, did not constitute a robbery as a matter of law. The Court of Special Appeals rejected his argument as meritless, as do we.

We will consider the evidence adduced at trial sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Winder v. State*, 362 Md. 275, 325, 765 A.2d 97, 124 (2001); *Briggs v. State*, 348 Md. 470, 475, 704 A.2d 904, 907 (1998). Applying this standard to the facts

found by the trial court, we find there is sufficient evidence to convict petitioner of robbery.

Recently, in *Coles v. State*, 374 Md. 114, 821 A.2d 389 (2003), this Court considered the necessity of force or fear as an element of robbery. In *Coles*, the defendant had entered a bank on three separate occasions and, without displaying any weapon, presented the bank tellers with written demands for money. Judge Battaglia, writing for the Court, indicated that the presence of a concealed weapon reasonably could be inferred from the circumstances and that the force or intimidation was not based on the subjective belief of the tellers. *Id.* at 127, 821 A.2d at 397. The Court found there was sufficient evidence of intimidation, or placing in fear, to support the defendant's convictions for robbery. *Id.* at 125, 821 A.2d at 396.

In the present case, the evidence of intimidation was clear. Petitioner drew a gun on the clerks, demanded money, and threatened to shoot them. Having failed to obtain money from the clerks at gun-point, petitioner returned his gun to his pocket. He then took a pack of cigarettes on his way out the door. Petitioner argues that, "while the cigarettes were taken from the presence of the employees, there was no force or intimidation employed in order to accomplish that taking." Because petitioner had already returned the gun to his pocket, and was leaving the store, petitioner claims that the taking was not "accomplished by means of force or putting in fear."

The record reveals evidence to the contrary. Petitioner's taking of the cigarettes was immediately after his threat. The clerks knew he was armed and, by his own declaration, willing to use his weapon. More to the point, one of the clerks testified as to why he did not stop petitioner. He said:

"Q: Why didn't you stop him from taking the cigarettes?

"A: Me?

"Q: Yes.

"A: How?

"Q: What was it that caused you not to try and stop him?

**456**

"A: He had a gun."

Clearly, the evidence was sufficient to find that the intimidating effect of petitioner's conduct continued throughout his taking of the cigarettes from the store.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.*