847 A.2d 1249

**David Michael FETROW**

v.

**STATE of Maryland.**

**No. 00425, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 30, 2004.

Mark Colvin (Stephen E. Harris, Public Defender on the brief), Baltimore, for Appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: HOLLANDER, KRAUSER, CHARLES E. MOYLAN, JR., (Retired, specially assigned), JJ.

HOLLANDER, Judge.

This case requires us to analyze the crime of robbery, with particular emphasis on the "intent to frighten" variety. A jury sitting in the Circuit Court for Prince George's County convicted David Michael Fetrow, appellant, of the robbery of Theodore Machen, along with related charges, including theft, hit and run, fleeing and eluding, and reckless driving.[1] On appeal, Fetrow poses one question: "Is the evidence insufficient to sustain the conviction for robbery?" We answer "no" and shall therefore affirm.

## FACTUAL SUMMARY

As a result of his conduct on November 19, 2001, appellant was charged with a variety of offenses. On January 17, 2002, appellant entered a "Plea of Not Criminally Responsible by Reason of Insanity." The court subsequently granted appellant's motion to bifurcate the guilt and criminal responsibility phases of the trial; appellant elected a jury trial as to the issue of guilt, but waived his right to a jury trial with regard to the issue of criminal responsibility. The guilt phase began on March 3, 2003.

Theodore Machen testified that at about 1:00 p.m. on November 19, 2001, he drove his white 1984 Pontiac Trans Am to a Shell Station in Greenbelt. Machen recalled that he pulled up to the service bay and, with the engine running, exited his

---

1. The jury acquitted Fetrow of first degree assault on Theodore Machen; robbery with a deadly weapon; carjacking; malicious destruction of property; and first and second degree assault on two of the officers involved in the high speed chase and apprehension of appellant. The jury was unable to reach a unanimous verdict on the counts charging second degree assault on Machen and first and second degree assault on the third officer involved in appellant's apprehension.

car to ask a mechanic to look at the vehicle. At the time, Machen was about three to four feet from the passenger side of his car. The mechanic directed Machen to pull the automobile into a nearby space. Machen turned around, took two steps towards the car, and saw appellant, who was wearing a long trench coat, walk up to the driver's side of Machen's automobile. According to Machen, appellant opened the car door, "pulled a 12 gauge shotgun" that was "concealed" out "from underneath his trench coat," and "put it on top of the T top" of Machen's car. Then, appellant removed his trench coat and put it in the car. Thereafter, Fetrow put the shotgun in the front seat of the vehicle, entered Machen's vehicle, and drove away.

Machen explained that he turned around at about the same time that appellant pulled the shotgun from under his trench coat. Further, Machen testified that, when he saw the gun, he "felt that [his] life was in danger." Indeed, upon seeing the shotgun, Machen stated that both he and the mechanic "ran for cover." Machen added that "[a]ll of the mechanics saw it and everybody went for cover." Then, they asked the cashier to call the police.

During cross-examination, Machen admitted that appellant never pointed the shotgun directly at him. Nor did appellant make any threatening remarks.

Michael Brooks testified that, while appellant was driving the Trans Am, he struck Brooks's vehicle, backed up to leave, and then struck an Acura. Accordingly, Brooks followed the Trans Am, which ran "a couple lights," until the police appeared.

Adam Paik, the driver of the Acura, testified that he called the police after he was sideswiped by the Trans Am. He, too, followed the Trans Am until the police arrived. Paik recalled that the Trans Am drove to a recreation area near a school, and he saw appellant "do like doughnuts in the field, then he proceeded on past the children and then he went back towards the wooded area like where the tree line was."

Corporal David Buerger, stationed at Roosevelt High School, pursued the Trans Am after he heard a broadcast over the radio. Buerger observed appellant run a stop sign, hit a marked police car and another car, and then drive over a foot bridge into the recreation field. Despite Buerger's attempts to stop the vehicle, it took three shots, fired into the hood of the Trans Am by Officer Seung Lee, to force appellant out of the car. After appellant was arrested, Buerger looked inside the Trans Am and found a 12 gauge shotgun in the front seat. Buerger testified, however, that he never saw the shotgun until he approached the empty vehicle; appellant did not point the shotgun at the officers nor did he fire the weapon.

Officers Edward Holland and Seung Lee provided testimony similar to that of Corporal Buerger. Detective Steven Keller, a crime scene analyst for the Greenbelt Police Department, testified that he recovered a 12 gauge, Remington Model 1100 semi-automatic, shot gun from the front seat of the Trans Am. According to Keller, the weapon measured approximately 30 inches in length and was loaded. Keller also recovered a bookbag containing three boxes of 12 gauge ammunition from the back of the Trans Am.

Detective William Allwang testified that he obtained a written statement from appellant after his arrest. Appellant wrote, in part:

On [November 19, 2001] I David Fetrow became aggrivated [sic]. I believed that people were going to abandon me in my situation being broke jobless without food and hungry. It seemed as if I was being used against my will. This prompted me to take action. In my eyes I had done virtually all that had been alloted [sic] in my ability. So what transpired was little more than an aggitated [sic] call for help. I put on my vest and coat, grabbed my bookbag and shotgun looked outside and decided to go ahead and do whatever it was I was going to do. In my mind I wanted to destroy cop cars ... I also kept getting ideas about doing something else whether it was robbing somebody or taking someone hostage. I walked out of my house and up to Greenbelt rd. I took a breathe [sic] having little or no fear

in me and began walking down the road holding the shotgun in my left hand. The gun was heavy so I switched it's [sic] position a couple times and kept walking. As I was approaching the Beltway Plaza Shell gas station, a white Camaro or other sports car pulled in to get gas. I walked up to the car, which was empty, saw that the keys were in the ignition and got in. The apparent owner of the vehicle was stand-off-ish and did not seem aware of what I was doing, until I had already got into the car or very shortly before.

\* \* \*

While in the car the shotgun was in my lap the barrel closest to me. On the road I began thinking of what I was going to do. My ideas included shooting cop cars, robbing somebody, killing people, and getting my mail. I decided shooting cop cars would be my best determination so I got in the left lane to get onto Kenilworth avenue towards Crescent road. At the stoplight I bumped into a car at which point I decided to get out of the turn lane back onto Greenbelt road. My alternate route was down southway which was blocked off. This prompted me to get onto Ridge rd. which is when I noticed cop cars behind me. With the shotgun in my lap I decided to go instead of stop. I do not know the names of all the roads I turned on but during the chase I had not 1 idea of stopping and could not feel 1 ounce of fear. When I realized the car I was driving was not any good anymore [sic] and my path was blocked I gave up. Part of me wanted to go out shooting but I recognized all of the police officers and I had no chance of winning so I put my hands in the air and out the window right before the cops pulled me out of the car and put me on the ground. I had no fear during the entire incident. And only looked on questioningly while I was being shot at. I did not try to hurt anybody and hope that nobody was hurt. . . .

At the end of the State's case, appellant moved for judgment of acquittal. In regard to the charges of assault of a police officer based upon the car crash, the State agreed to

*nolle prosse* that charge. With regard to the charges of attempted murder, reckless endangerment, malicious destruction of property, and carrying a dangerous weapon openly, the court granted Fetrow's motion. Concerning the carjacking, appellant pointed to Machen's distance from the vehicle and the lack of actual force used by appellant to take the car. Nevertheless, the court denied the motion as to that charge. With respect to the two robbery charges, appellant argued that the State failed to show he took Machen's car by force or threat of force. Defense counsel said:

> The charge in this case was specifically indicted [sic] that my client used force and violence, and I would submit that that would require more than, like I just said, just placing the shotgun on top of the car, if you were to believe that and that, in fact, Mr. Machen saw that.

> This is not a situation where the State is charging my client with my client putting a person in fear through intimidation or threat of force and violence. And I think that that's distinguishable in this case.

> If my client had pointed the shotgun at Mr. Machen, then you could argue that that was done without putting Mr. Machen in fear through intimidation of threat or force and violence. But, again, the allegation is that my client used force and violence. I argue at this juncture that there isn't a sufficient showing to allow this court to go forward because there isn't a sufficient showing that my client used force or violent. [sic]

Again, the court denied the motion. As to the assault charges, the court denied the motion based on the presence of the shotgun.

Appellant was the sole witness for the defense. He stated that he was walking from his home in College Park to Greenbelt, alternately carrying the weapon openly and concealing it under his coat. As he passed the Shell station, he saw a car with the engine running. Appellant testified:

> While I was walking by the Shell Gas Station, I saw that there was a car with the keys in the ignition running in the

parking lot. And there were two men standing approximately 15 to 20 feet away from the car. So I proceeded to the car carrying the shotgun. I put the shotgun on top of the car, opened the door, put my back pack in the car, got the shotgun and with the shotgun got into the car. Then closing the door, I put the car I believe in reverse, reversed the car and put it forward and pulled the car out.

The following exchange is pertinent:

[APPELLANT'S ATTORNEY]: Did you intend to place them in fear with that shotgun? . . .

[APPELLANT]: No. . . .

[APPELLANT'S ATTORNEY]: What was your intention when you got in that car?

[APPELLANT]: My intentions were unclear. I was thinking about many things.

* * *

[APPELLANT'S ATTORNEY]: Why did you get in that car?

[APPELLANT]: I did not know that there was going to be a car there. I got in the car because the keys were in the ignition and it was running.

Appellant denied that he pointed the weapon at Machen or the mechanic. He also testified that he did not intend to harm any of the police officers or their vehicles. Explaining why he fled from the police, appellant said: "I was afraid, since I had a shotgun in the car and I had already taken a car, that I would be in trouble, so I fled from the police."

During cross-examination, the prosecutor asked appellant whether he ever said "anything to the owner/driver or did [the owner] say anything to you?" Fetrow replied, "No."

At the conclusion of the defense case, appellant unsuccessfully renewed his motion for judgment as to the remaining charges. Thereafter, the case was submitted to the jury, which resulted in the convictions recounted earlier.

Thereafter, following a court trial in March of 2003, at which the court heard evidence of appellant's history of mental illness, the court found appellant not criminally responsible. On May 20, 2003, following a disposition hearing, appellant was committed to the Department of Health and Mental Hygiene.

## DISCUSSION

Appellant argues that the evidence was insufficient to sustain his robbery conviction. In particular, Fetrow claims that the evidence did not show that he took Machen's property by means of force or violence, or that he acted with the specific intent to place Machen in fear. In regard to appellant's claim as to the intent to frighten element, appellant points out that there was no evidence that he ever pointed the weapon at Machen or anyone else, nor did he threaten to harm anyone. According to Fetrow, because the State did not prove either the element of use of force or the element of intent to frighten, the evidence merely amounted to the crime of theft.

Appellant does not dispute that Machen would have experienced actual fear during the incident. Nevertheless, he contends that a victim's actual fear is not equivalent to the defendant's specific intent to frighten. In Fetrow's view, there was no evidence that he harbored a specific intent to frighten. According to appellant, his action of removing the shotgun from underneath his coat and placing it on the roof of the car, without pointing the gun at anyone or threatening anyone, does not give rise to an inference that he acted with the intent to frighten. Rather, appellant maintains that the only reasonable inference that could be drawn from such conduct is that he "put the shotgun on top of the car simply because it was a convenient place to put the shotgun for a few seconds while he removed his backpack and coat and put them into the car." Similarly, in his reply brief, appellant reiterates that "no rational trier of fact could find, beyond a reasonable doubt, that [appellant] placed the shotgun on top of the car with the intent to place Machen in fear of bodily harm."

Thus, Fetrow insists that "the evidence supports two equally reasonable inferences, one consistent with guilt of a greater offense, and the other consistent with guilt of a lesser offense...." Accordingly, appellant maintains that he could "be convicted only of the lesser offense," because the factfinder is not allowed "to speculate as to which [inference] is correct."

The State counters that "there was ample evidence to support the inference that the taking was by intimidation," i.e., with the intent to put the victim in fear. Moreover, it maintains that when appellant placed the shotgun on top of the car, he " 'excite[d] reasonable apprehension of danger, and reasonably ... cause[d] the owner to surrender his property.' " (*quoting Spence v. State*, 51 Md.App. 359, 361, 443 A.2d 648 (1982), *rev'd. on other grounds*, 296 Md. 416, 463 A.2d 808 (1983)). In its view, Machen's testimony that he "felt that [his] life was in danger" satisfied the "putting in fear" element.

■■■ When reviewing a claim based on sufficiency of evidence, we must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see State v. Smith*, 374 Md. 527, 533, 823 A.2d 664 (2003); *Moye v. State*, 369 Md. 2, 12, 796 A.2d 821 (2002); *Winder v. State*, 362 Md. 275, 325, 765 A.2d 97 (2001); *State v. Sowell*, 353 Md. 713, 726, 728 A.2d 712 (1999). Evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). We review the evidence in the light most favorable to the prosecution, and will reverse the judgment only if we conclude that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *see Facon v. State*, 375 Md. 435, 454, 825 A.2d 1096 (2003); *Coles v. State*, 374 Md. 114, 122, 821 A.2d 389

(2003); *Moye,* 369 Md. at 12, 796 A.2d 821; *Sowell,* 353 Md. at 726, 728 A.2d 712.

In regard to sufficiency, the limited question before an appellate court "is not whether the evidence *should have or probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder." *Fraidin v. State,* 85 Md.App. 231, 241, 583 A.2d 1065, *cert. denied,* 322 Md. 614, 589 A.2d 57 (1991)(emphasis in original). Moreover, it is not the function of the appellate court to determine the credibility of witnesses or the weight of the evidence. *Jones v. State,* 343 Md. 448, 465, 682 A.2d 248 (1996); *McCoy v. State,* 118 Md.App. 535, 538, 703 A.2d 237 (1997), *cert. denied,* 349 Md. 235, 707 A.2d 1329 (1998). Rather, it is the jury's task to resolve any conflicts in the evidence and assess the credibility of witnesses. *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994).

Applying the applicable standard of review to the evidence adduced at trial, we conclude that the evidence was sufficient to support appellant's conviction for robbery. We explain.

At one time, robbery was a common law crime in Maryland; the earlier statute, Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 486, only set forth the sanctions upon conviction. *See Borchardt v. State,* 367 Md. 91, 145 n. 9, 786 A.2d 631 (2001), *cert. denied* 535 U.S. 1104, 122 S.Ct. 2309, 152 L.Ed.2d 1064 (2002). Effective October 1, 2000, however, the General Assembly enacted a statutory robbery offense, which was initially codified in Article 27, § 486 of the Maryland Code. *See* 2000 Md. Laws, ch. 288. That codification was in effect on November 19, 2001.[2] Pursuant to Md.Code (1957, 2000 Repl. Vol.), Article 27, § 486(b)(1), the statutory offense of robbery retains its "judicially determined meaning," but "requires proof of intent to deprive another of property."

---

**2.** Effective October 1, 2002, sub-sections (b) and (c) of Art. 27, § 486 were recodified, without substantive change, as Md.Code (2002), Criminal Law Article, §§ 3–401(e) and 3–402(a).

■■ The common law definition of robbery is well settled. Under Maryland law, "[r]obbery is 'the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear.'" *Metheny v. State*, 359 Md. 576, 605, 755 A.2d 1088 (2000) (quoting *Williams v. State*, 302 Md. 787, 792, 490 A.2d 1277 (1985)); *see also Borchardt v. State*, 367 Md. at 145–46, 786 A.2d 631; *Ball v. State*, 347 Md. 156, 184, 699 A.2d 1170 (1997), *cert. denied*, 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998); *Facon v. State*, 144 Md.App. 1, 31, 796 A.2d 101 (2002), *rev'd on other grounds*, 375 Md. 435, 825 A.2d 1096 (2003). Robbery with a dangerous or deadly weapon is the offense of common law robbery, aggravated by the use of a "dangerous or deadly weapon." *Couplin v. State*, 37 Md.App. 567, 582, 378 A.2d 197 (1977), *cert. denied*, 281 Md. 735 (1977). *See Bowman v. State*, 314 Md. 725, 730, 552 A.2d 1303 (1989); *Facon*, 144 Md.App. at 31, 796 A.2d 101; Md.Code (2002), Criminal Law Article § 3–403.

■ As appellant observes, robbery is a specific intent crime. *Coles*, 374 Md. at 123, 821 A.2d 389; *Hook v. State*, 315 Md. 25, 30, 553 A.2d 233 (1989); *Leeson v. State*, 293 Md. 425, 435, 445 A.2d 21 (1982); *State v. Gover*, 267 Md. 602, 606, 298 A.2d 378 (1973); *Wieland v. State*, 101 Md.App. 1, 37, 643 A.2d 446 (1994). Absent a larcenous intent, one does not commit the offense of robbery. *Coles*, 374 Md. at 123, 821 A.2d 389; *Hook*, 315 Md. at 30–31, 553 A.2d 233; *Leeson*, 293 Md. at 434, 445 A.2d 21; *Gover*, 267 Md. at 606, 298 A.2d 378. Moreover, the "hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force...." *Coles*, 374 Md. at 123, 821 A.2d 389; *see Spitzinger v. State*, 340 Md. 114, 121, 665 A.2d 685 (1995); *Thomas v. State*, 128 Md.App. 274, 300, 737 A.2d 622, *cert. denied*, 357 Md. 192, 742 A.2d 521 (1999).

■ Robbery is also a compound larceny. It can be accomplished "either [by] a combination of a larceny and a battery or a combination of a larceny and an assault, of the 'putting in fear' variety." *Tilghman v. State*, 117 Md.App.

542, 568, 701 A.2d 847 (1997), *cert. denied,* 349 Md. 104, 707 A.2d 90 (1998); *see Snowden v. State,* 321 Md. 612, 618, 583 A.2d 1056 (1991). In this case, there was no evidence that appellant employed actual physical force during the commission of the taking. However, the element of force or violence may be satisfied by constructive force. *Coles,* 374 Md. at 126, 821 A.2d 389; *Facon,* 144 Md.App. at 31, 796 A.2d 101. In this context, constructive force is also referred to as intimidation or an intent to put the victim in fear. *Brooks v. State,* 314 Md. 585, 597, 552 A.2d 872 (1989); *Thomas,* 128 Md.App. at 298–301, 737 A.2d 622; *Gray v. State,* 10 Md.App. 478, 481, 271 A.2d 390 (1970); *Giles v. State,* 8 Md.App. 721, 723, 261 A.2d 806 (1970). As we stated in *Douglas v. State,* 9 Md.App. 647, 653, 267 A.2d 291 (1970), "actual violence is not required; constructive violence, which is present through intimidation, is sufficient."

At one end of the spectrum, then, the use of a deadly weapon generally constitutes "the necessary element of force or violence or putting in fear sufficient to raise the taking of property from the person from larceny to robbery." *Bowman,* 314 Md. at 730, 552 A.2d 1303. Constructive force, i.e., intimidation or the intent to frighten, occupies the other end of the spectrum. In this case, says appellant, the evidence did not show either actual or constructive force.

In *West v. State,* 312 Md. 197, 539 A.2d 231 (1988), the Court explained that the degree of force necessary to constitute a robbery is immaterial, " 'so long as it is sufficient to compel the victim to part with his property.' " *Id.* at 205, 539 A.2d 231 (citation omitted); *see Facon,* 144 Md.App. at 32, 796 A.2d 101. Similarly, in *Ball,* 347 Md. at 188, 699 A.2d 1170, the Court made clear that, when "the use of force enables the accused to retain possession of the property in the face of immediate resistance from the victim, then the taking is properly considered a robbery."

To be sure, the sudden snatching of property, without violence or putting in fear, would not amount to a robbery.

*Bowman,* 314 Md. at 729, 552 A.2d 1303. But, as one commentator explained:

> Intimidation sufficient for guilt of robbery, if the felonious purpose is accomplished, does not imply any great degree of terror or affright in the party robbed: it is enough that so much force or threatening by word or gesture be used as might create an apprehension of danger, or induce a man to part with his property without or against his consent. One who places his money in another's hand for fear of consequences does not part with it voluntarily.

R. PERKINS, CRIMINAL LAW 282 (2d ed. 1969) ("Perkins").

We are also guided by what this Court said in *Thomas, supra,* 128 Md.App. at 300–01, 737 A.2d 622:

> The taking of property from the person of another, *accompanied either by* force sufficient to overcome resistance or by putting the victim in sufficient fear to refrain from resistance is the same as taking by violence or putting in fear. If the victim, put in fear by such words as "This is a stick up," uttered by one carrying an object that appears to the victim to be a possible weapon, does not resist the taking of her property, the theft *accompanied by putting* in fear is a theft *by putting* in fear.

(Emphasis in original).

The case *sub judice* is unlike *West v. State, supra,* 312 Md. 197, 539 A.2d 231. There, the Court of Appeals discussed "the degree of violence or putting in fear that is requisite" for a robbery conviction. In that case, after leaving a drug store, " 'a man just snatched [the victim's] purse from [her] hand and he ran, that's when [she] noticed [her] pocketbook was gone when he ran.' " *Id.* at 199, 539 A.2d 231 (citation omitted). Noting that the victim was unaware of the crime; "was never placed in fear; she did not resist; [and] she was not injured," *id.* at 206, 539 A.2d 231, the Court held that the element of violence or fear was not established. *Id.* at 207, 539 A.2d 231. It reasoned that "the mere snatching or sudden taking away of the property from the person of another does not constitute sufficient force, violence, or putting in fear to

support a robbery conviction." *Id.* at 206, 539 A.2d 231. *Cf. Raiford v. State,* 52 Md.App. 163, 170, 447 A.2d 496 (1982), *rev'd in part on other grounds,* 296 Md. 289, 462 A.2d 1192 (1983) (stating that the ripping of the shoulder strap of a purse from the victim's shoulder provided the requisite resistance to constitute robbery instead of larceny).

The recent case of *Coles v. State, supra,* 374 Md. 114, 821 A.2d 389, also provides guidance. There, the Court held that the "putting in fear" element of robbery was satisfied when the defendant committed a series of bank robberies by giving demand notes to the tellers. *Id.* at 116, 821 A.2d 389. Of interest here, Coles claimed that the evidence was insufficient to satisfy the intimidation or putting in fear element. *Id.* at 116, 821 A.2d 389. Indeed, he argued that there was no evidence that he "specifically intended to frighten the tellers." *Id.* at 125, 821 A.2d 389. Among other things, Coles pointed to the absence of any threats or the use of a weapon. *Id.* at 125, 821 A.2d 389. Nevertheless, the Court rejected that contention; it considered the evidence "more than sufficient to satisfy the element of intimidation. . . ." *Id.* at 129, 821 A.2d 389.

*Facon v. State, supra,* 375 Md. 435, 825 A.2d 1096, while factually distinguishable, is also helpful. There, a man entered a convenience store, opened his jacket to display a handgun, and ordered the clerks to open the register. *Id.* at 441, 825 A.2d 1096. After the clerks failed to comply, Facon unholstered the gun, pointed it at the clerks, and stated: "Open the register or I'll blow your heads off." *Id.* When the clerks still did not comply, Facon put his gun back in his pants, grabbed a pack of cigarettes, and left the store. *Id.* The clerks testified that they made no attempt to stop the assailant because he "had a gun." *Id.* On appeal, Facon claimed that there was no evidence of force or intimidation in regard to taking the cigarettes, and urged reversal of his armed robbery conviction on that basis. *Id.* at 454, 825 A.2d 1096. The Court rejected Fetrow's claim, concluding that "the evidence of intimidation was clear" because, although Facon did not use the gun to take the cigarettes, he had shown the

clerks that he was armed and the taking occurred immediately after he had made a threat. *Id.* at 455, 825 A.2d 1096.

Recently, in *Somers v. State,* 156 Md.App. 279, 846 A.2d 1065 (2004), this Court considered the sufficiency of the evidence in regard to a conviction for carrying a dangerous weapon openly with the intent to injure. The defendant argued that, even in the light most favorable to the State, the evidence "could not support the reasonable finding that he had an intent to injure the store clerk, as opposed to merely having an intent to frighten him," when he entered a liquor store and ordered the clerk, at gunpoint, to put the money from the cash register into a bag. *Id.,* at 315, 846 A.2d 1065, 2004 WL 768599, at *19. We disagreed.

The Court noted that the State did not have to prove that the defendant committed an assault in order to prove the element of a specific intent to injure. *Id.,* at 315, 846 A.2d 1065, 2004 WL 768599, at *19. The Court said:

> *Proof of the element of intent in a crime can be shown by circumstantial evidence, that is facts that permit a reasonable inference that the intent existed.* For example, an intent to kill may be proven circumstantially, based on inferences drawn from the firing of a weapon directed at a vital organ of the body. *Smallwood v. State,* 343 Md. 97, 104, 680 A.2d 512 (1996); *State v. Raines,* 326 Md. 582, 591, 606 A.2d 265 (1992); *State v. Earp,* 319 Md. 156, 167, 571 A.2d 1227 (1990). *See also Martin v. State,* 203 Md. 66, 75, 98 A.2d 8 (1953) (holding that criminal intent may be shown by circumstantial evidence).

> In the case at bar, the evidence showed that Somers was carrying the rifle (which no one disputes was a dangerous weapon), was masked, and was pointing the rifle directly at the sales clerk as he ordered him to put money from the cash register in a bag. These facts supported a reasonable inference that Somers was engaging in that conduct with the present intention and purpose to shoot the clerk, either as part of an effort to terrorize or to force compliance if the clerk did not accede to the demand for money. Somers's

acts were sufficient to support an inference that he had an intent or purpose to injure the clerk with the dangerous weapon he was carrying. To be sure, the evidence also was sufficient to show that Somers intended to frighten the clerk with the weapon.

*Id.,* at 316, 846 A.2d 1065, 2004 WL 768599, at *20 (emphasis added).

Intent is rarely shown by direct evidence. The cases cited above teach that, in resolving the questions of whether the perpetrator intended to instill fear and whether a victim reasonably experienced fear, the fact finder is entitled to apply its " 'common sense, powers of logic, and . . . experiences in life' " in assessing the facts. *See Bruce v. State,* 318 Md. 706, 730, 569 A.2d 1254 (1990) (quoting *Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395 (1989)). We have little trouble in concluding that the jury was entitled to find from the facts and inferences that appellant acted with the specific intent of putting Machen in fear.

Appellant could have continued to conceal his weapon under his coat as he entered the vehicle. Instead, he removed the weapon. Fetrow's removal of the shotgun from under his coat, in the presence of others who were standing nearby, was reasonably construed by the jury as a purposeful, deliberate gesture or threat of force, designed to create "an apprehension of danger, or induce a man" not "to resist." Perkins, Criminal Law 282. And, a jury could readily find that appellant's conduct " 'was reasonably calculated to produce fear.' " *Dixon v. State,* 302 Md. 447, 462, 488 A.2d 962 (1985) (citation omitted).

With the shotgun in plain view, it was clearly evident to Machen (and the others) that appellant had the apparent ability to inflict deadly harm. In an instant, the shotgun could have been turned and utilized to inflict serious injury or death. Under the circumstances of this case, the jury was entitled to construe appellant's deliberate display of the shotgun as an intentional threat of force. In short, the jury was not required to accept appellant's "alternate explanation" that, as a

matter of convenience, he merely placed the shotgun on top of the car before getting in the vehicle.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**