## CAMPBELL *v.* STATE

[No. 305, September Term, 1964.]

*Decided August 23, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*William O. Goldstein,* with whom was *David Kimmelman* on the brief, for appellant.

*Julius A. Romano, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

Norman Anthony Campbell, the appellant, was found guilty by the Criminal Court of Baltimore on both counts of a two-count indictment charging him with attempted burglary (count 1) and with being a rogue and vagabond (count 2) ; he was sentenced to serve eighteen months in the House of Correction on the first count, and two years, on the second count, both sentences to be served concurrently, and both to commence at the expiration of a sentence Campbell is now serving. The appellant contends that the evidence was insufficient to sustain the conviction on the attempted burglary count, and that the trial court erred in admitting an oral confession made by the appellant, for several reasons to be considered later.

Rocco's Sandwich Carry-Out Shop is located at 1217 Laurens Street, near the intersection with Carey Street, in Baltimore City, Maryland, and is owned and operated by one William Harris. On the morning of August 17, 1963, Mr. Harris closed the sandwich shop at 2:30 A.M. and prepared to retire for the night. Harris slept on a cot in the back room of the establishment; this cot was six or seven feet from a window which was raised for ventilation and which contained wire screening. Harris had just begun to doze, with his trousers on and with a .25 caliber Baretta automatic pistol in his trouser pocket, as was his custom, when he heard a "ripping" sound against the

window screen. Within a short time someone pulled away the screen and began to climb into the window. When the intruder had pushed his head and upper body through the window, Harris removed the pistol from his trouser pocket, aimed and fired it at him. The intruder hastily withdrew; Harris quickly arose from his cot and ran into the street. Although he never was able to identify the man's face, Harris described the intruder to the police as a colored male, weighing from 150 to 170 pounds, wearing blue jeans and a short sleeve shirt. Also, he observed the man running down the street in a crouched position, holding his face in his hands.

Officer Joseph Brown arrived at the sandwich shop shortly after 4:25 A.M. in response to a call by Mr. Harris to the Baltimore City Police Department. Within a short time Officer Brown had assembled all the information which Harris could give him, made a tour of the immediate area, and departed. At 5:40 A.M. Officer Brown was instructed to report to University Hospital, some eighteen blocks away (a five minute automobile ride at that hour of the morning) to investigate a report that a man had just been admitted there with gunshot wounds. At the Hospital, Officer Brown and Sergeant Francis Earhardt encountered the appellant, Campbell, on the second floor, lying on a cot in the hall just outside the door to the X-ray room, in a white hospital gown. According to Brown and Earhardt, the man's lip was somewhat puffed up, but he was conscious, talked coherently—though with some effort—and appeared to be in no pain. Brown testified that he inquired of an intern at the hospital if it was all right for Brown to talk to the injured man and that the intern indicated that it would be all right. Brown approached the patient and asked, "How did you get shot?"; Campbell, according to both officers, replied, "I might as well tell you, I got shot at Laurens and Carey, breaking in the restaurant."

Appellant's counsel argues that Campbell's confession, even if voluntary should nonetheless be excluded because it was oral. Oral confessions, he urges, are inherently untrustworthy and unreliable.

The Maryland law is well established to the contrary. In

*Wells v. State,* 236 Md. 381, 203 A. 2d 912 (1964), Judge Horney, for the Court, summarized the Maryland law in this regard as follows:

> "The cases make it clear that oral as well as written confessions, if freely and voluntarily given, are admissible, as evidence. See among others, *Cooper v. State,* 205 Md. 162, 106 A. 2d 129 (1954), *cert. den.* 348 U. S. 896 (1954) ; *Felkner v. State,* 218 Md. 300, 146 A. 2d 424 (1958) ; *Hall v. State,* 223 Md. 158, 162 A. 2d 751 (1960) ; *Glaros v. State,* 223 Md. 272, 164 A. 2d 461 (1960) ; *Bagley v. State,* 232 Md. 86, 192 A. 2d 53 (1963). And the fact that a confession is oral does not impose on the State an additional burden to prove its voluntary character. *Williams v. State,* 231 Md. 83, 188 A. 2d 543 (1963) ; *Gault v. State,* 231 Md. 78, 188 A. 2d 539 (1963). (p. 386 of 236 Md., p. 915 of 203 A. 2d).

The appellant denied that he made the confession because of the severe damage to his mouth and teeth. The trial court, however, believed the testimony of Officer Brown and Sergeant Earhardt in regard to the making of the oral confession, rather than that of the appellant and it cannot be said that he was clearly erroneous in so doing. We have stated many times that in a non-jury case, we will not reverse the judgment of the trial court upon the evidence unless clearly in error, and due regard will be given the opportunity of the lower court to judge the credibility of the witnesses. Maryland Rule 886 a. *Johns v. Director,* 239 Md. 411, 211 A. 2d 751 (1965).

. The decision of the U. S. Supreme Court in *Escobedo v. Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964) is not apposite to the facts of this case. See *Mefford v. State,* 235 Md. 497, 201 A. 2d 824 (1964), cert. den. 380 U. S. 937 (1965) ; *Cowan v. State,* 238 Md. 433, 436, 209 A. 2d 552, 554 (1964) ; *Parker v. Warden,* 236 Md. 236, 203 A. 2d 418 (1964) ; *Green v. State,* 236 Md. 334, 203 A. 2d 870 (1964) ; *McCoy v. State,* 236 Md. 632, 204 A. 2d 565 (1964) ; *Wilkins v. State,* 237 Md. 617, 205 A. 2d 593 (1964) ; and *Ramsey v.*

*State,* 239 Md. 561, 212 A. 2d 319 (1965). As Chief Judge Prescott, for the Court aptly stated in *Ramsey*:

> "[T]he appellant claims his confession was inadmissible, relying upon *Escobedo v. Illinois,* 378 U. S. 478. There is no evidence to show whether or not the police specifically advised the defendant of his right to remain silent or of his right to counsel; however, there was no evidence that he requested counsel or was denied the right to obtain the same. Although appellant claimed that one of the officers threatened to involve his wife and child in the commission of the crime and this induced him to confess, this was flatly denied by the officer, who testified further that no threats, promises, or inducements of any kind were made or held out to the accused. In fact, the officer did not know of the Prince George's County offense until the appellant told him of it. No lengthy detentions or interrogations were claimed. The trial judge concluded that the confession had been freely and voluntarily made and admitted it. We hold that his action was correct. Until more specific light is given by the Supreme Court on the subject under consideration, we adhere to our previous decisions." (at p. 565 of 239 Md.)

Substantially all of the above mentioned cases are then cited with approval.

The final contention is that the statement given to the police is involuntary because made under the influence of a pain-deadening drug, administered by the hospital authorities upon Campbell's admission to the University Hospital. While there is no testimony from any of the hospital staff as to the injection of any drug into Campbells' bloodstream, or the effects, if any, upon the recipient's will, Campbell's testimony that such a drug was administered was not contradicted or impeached. In the vast majority of jurisdictions, however, this circumstance would not preclude a truly voluntary statement, as a matter of law. See Annotation, *Use or administration of drugs or narcotics as affecting admissibility of confession,* 69 A.L.R. 2d 384 (1960).

The Maryland position was recently stated by Judge Marbury for the Court in *Bryant v. State,* 229 Md. 531, 535, 185 A. 2d 190 (1962), as follows:

> "'The appellant's counsel did elicit from the witness the fact that the appellant was probably under the influence of narcotics at the time of the confession, but this does not of itself make the confession not free and voluntary."

Cf. *McClearly v. State,* 122 Md. 394, 89 A. 1100 (1914); *Griffith v. Rhay,* 177 F. Supp. 386 (D.E.D. Wash. 1959); *People v. Sanchez,* 12 Cal. Rptr. 906 (Dist. Ct. App. 1961); *State v. Wade,* 40 N. J. 27, 190 A. 2d 657 (1963). Nothing in *Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963), reversing on other grounds 276 F. 2d 324 (C.A. 7, 1960) compels a contrary conclusion. There, Chief Justice Warren said "Numerous decisions of this Court have established the standards governing the admissibility of confessions into evidence. If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement." (p. 307 of 372 U. S.). Thus, even if Campbell's statement were made at a time while he was under sedation (and there is no suggestion that the statement here was *caused* by the drug—i.e., it was not a "truth serum" as in *Townsend*), it may still be admitted into evidence if in fact it was voluntary. Again, since Campbell's position has consistently been that no admission or confession was ever made, due to the wounds to his teeth and mouth, the relevance of this approach on his part is not apparent.

In our opinion the evidence of Harris and the oral confession of the appellant were sufficient to sustain the conviction on the attempted burglary count.

Since the sufficiency of the evidence to sustain the finding of being a rogue and vagabond (and for which the longer of the two sentences was imposed) has not been challenged, it is

not necessary to discuss this conviction. Cf. *Pointer v. State,* 238 Md. 23, 207 A. 2d 611 (1965) ; *Shaney v. State,* 236 Md. 636, 204 A. 2d 682 (1964).

*Judgments affirmed.*