873 A.2d 395

**Anthony Leon HARPER**

v.

**STATE of Maryland.**

**No. 2700, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 28, 2005.

56

58

60

Jason A. Abel, Washington, DC (Nancy S. Forster, Public Defender, on brief), for appellant.

Shannon E. Avery (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before MURPHY, C.J., DAVIS, and DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, J.

A jury in the Circuit Court for Prince George's County convicted Anthony Leon Harper, a/k/a Francis McClain, the appellant, of robbery, theft of property valued at less than $500, second-degree assault, and making a false statement to a police officer. The court merged the theft and assault convictions into the robbery conviction, and sentenced the appellant to 15 years in prison, with all but 12 years suspended. It imposed a six-month prison sentence, to be served consecutively to the robbery sentence, for making a false statement.

On appeal, the appellant presents two questions, which we have reworded:

I. Did the hearing court err by denying his motion to suppress his confession?

II. Did the trial court err by refusing to sever the false statement charge?

For the following reasons, we shall reverse the judgments and remand the case to the circuit court for further proceedings, based on our analysis of Issue I. We shall address Issue II because it is likely to arise on remand.

## FACTS AND PROCEEDINGS

The convictions in this case stem from an attack that occurred just before 8:00 a.m. on May 13, 2003, outside

Arrowhead Elementary School in Upper Marlboro. The victim, a teacher, was walking from the parking lot to the building at the start of the school day. A man accosted her and grabbed her purse, causing her to fall to the ground. When the victim would not release the purse, the man kicked her in the head. He then ran off with the purse.

A school employee who had seen a man near the school shortly before the attack gave a description of the man to police. Eleven days later, the employee saw the appellant sitting under a tree by the side of a street, two or three miles from the school. Believing the appellant was the man he had seen outside the school on the morning of the attack, the employee flagged down a police officer. The appellant was arrested and taken to the police station. There, identifying himself as Francis McClain, he made an inculpatory statement to Detective Charles Brew.

The police later learned that "Francis McClain" was an alias. The appellant was charged with robbery, theft of property valued at less than $500, and second-degree assault, arising out of the attack on the teacher; and making a false statement, arising out of his use of an alias when he was apprehended and questioned by the police.

Before trial, the appellant moved to suppress his inculpatory statement to Detective Brew. After an evidentiary hearing, the court denied the motion. At trial, the statement was admitted into evidence over objection.

## DISCUSSION

### I.

### *Overview of Suppression Hearing Evidence*

Detective Brew testified as follows at the suppression hearing. The appellant was arrested at about 5:00 p.m. on May 24, 2003. He was transported directly to the police station and placed in an interview room.

At 6:45 p.m., Detective Kelly Rogers advised him of his *Miranda* rights.[1] The appellant identified himself to Detective Rogers as Francis McClain, and signed that name on an "Advice of Rights and Waiver Form." He placed checks and the initials "F. Mc." next to questions on the form, indicating that he understood his rights and wanted to make a statement, and that he had not been promised anything, offered any reward or benefit, or threatened in any way. In response to the question, "Are you under the influence of drugs or alcohol at this time," he checked "yes." Detective Rogers handwrote on the form that the appellant said he "had a beer 3 hrs. ago & smoked 2 'blunts,' " or marijuana cigarettes. The form was admitted into evidence.

In response to questions by Detective Rogers about the robbery, the appellant denied any involvement in the crime. Detective Rogers transcribed the appellant's oral responses into a written statement; the appellant did not sign the statement, however. Detective Rogers then left the appellant alone in the interview room. The transcribed exculpatory statement was introduced into evidence at the hearing.

At 8:45 p.m., Detective Brew entered the interview room. The appellant was asleep and had to be awakened. He was "[c]ooperative, but fading in and out because he was tired. He kept falling asleep." The appellant identified himself to Detective Brew as Francis McClain.

Detective Brew asked the appellant if he "had some sort of condition" that needed medical attention. The appellant answered that he would be all right. He told Detective Brew that he was hungry and thirsty. The detective gave him coffee and a candy bar.

The appellant appeared to Detective Brew "to be intoxicated or [to] be under the influence[,]" *i.e.,* he seemed "[h]igh." His "eyes were glazed over" and Detective Brew could "smell the marijuana on him." While the appellant's "demeanor was

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

consistent with being under the influence ... there was not a strong odor of an alcoholic beverage to go with it either. He may have been doing some drinking with it, but it was not as if he was falling down drunk."

According to Detective Brew, although the appellant seemed to be under the influence of some substance or substances, he nevertheless appeared to understand everything that was said to him. He responded appropriately to questions and said he could read and write.

As we shall recount in detail below, Detective Brew and the appellant talked some about the appellant's drug problem and drug treatment.

Detective Brew told the appellant that witnesses already had identified him in connection with the robbery outside Arrowhead Elementary School; therefore, his real interest was in finding out what the appellant knew about a suspect in an entirely different case. The detective questioned the appellant about that suspect, but steered the conversation back to the robbery. He then told the appellant:

[V]ictims often feel that they have been stalked, that they have been singled out for being attacked for some action that they did. That, oftentimes, the victims would like to have some closure so that they can go on with their lives, that if he wanted to, he could apologize to the victim and I could relate it to the victim to help them have some closure.

The appellant then dictated the following statement:

At the time that this happened, it wasn't intentional. I didn't mean to hurt you in any way. I do apologize for whatever harm or injury I may have caused. I did not intentionally kick you. Due to the fact that I was under the influence at the time, I was not in the right mind and I needed money for my habit.

Detective Brew transcribed this apology statement by hand onto the first page of a form entitled "Prince George's County Police Department Statement of Victim/Witness/Suspect." The page contained a line for the appellant's signature, but he did not sign it.

On the second page of the form, Detective Brew handwrote two questions about the location and time of the attack. The appellant declined to answer the questions. Under the second question, the detective handwrote the appellant's statement, "I want to stop on this for now." Detective Brew then wrote, "I gave Det. Brew permission to write this for me." The appellant signed the name "Francis McClain" under that sentence and added, "Because I was in & out sleeping." Finally, Detective Brew wrote, "Have you been treated fairly, pressured to talk to this detective, mistreated in any way?" The appellant responded simply, "No."[2] The transcribed inculpatory apology statement was admitted into evidence at the hearing.

The appellant testified at the suppression hearing. He said he did not remember much of what occurred at the police station because he was under the influence of marijuana, alcohol, and cocaine, and was "going in and out" of sleep. He recalled telling both detectives that his name was Francis McClain, however, and explained that he did so because he knew he "had a violation of probation." He also recalled signing the "Advice of Rights and Waiver Form" and making the exculpatory statement to Detective Rogers. He insisted, however, that he told Detective Rogers that he was under the influence of marijuana, alcohol, *and* cocaine, and did not tell her that he had consumed only one beer and two "blunts" several hours before his arrest.

Of his interaction with Detective Brew, the appellant remembered being given coffee and a candy bar, and, as we shall discuss, talking about his drug problem and drug treatment. He also remembered telling Detective Brew, in general terms, that he "would like to say I apologize for any inconvenience I may have caused anybody[,]" suggesting that he never specifically apologized to the victim. When shown the apology statement transcribed by Detective Brew, however, the appellant said, "I guess that's the statement I gave him. Like I

---

**2.** The appellant does not suggest that his answer corresponded only to the question, "Have you been treated fairly...."

told him, I could have wrote it myself. I have got a twelfth grade education and two and a half years of college." At the time of the hearing, the appellant was 37 years old.

### Suppression Hearing Evidence About The Appellant's Drug Problem and Drug Treatment

As noted previously, evidence was adduced at the suppression hearing that Detective Brew and the appellant discussed the appellant's drug problem and the topic of drug treatment. The evidence first came in on cross-examination of Detective Brew:

Q.... Did you at any time tell [the appellant] that you could get him any type of drug treatment?

A. No. I indicated that there are programs through the Department of Correction[ ], but not that I could set him up in them. No.

\* \* \*

Q. And you said you told him that there were programs at DOC? Is that what you said?

A. Yes.

Q. And it is your testimony that you never told him that you could get him into any type of program?

A. I don't think I told him I could do it. I think I said that we might be able to get him some through the State's Attorney or Parole & Probation or that the programs are run through them.

Q. Okay. So you couldn't do it, but might be able to through the State's Attorney or—

A. Right.

Q. And did you say that you could help him with that?

A. I could talk to them about that, for him to get into a program.

What do you mean?

Q. But you told him that the State's Attorney or Parole & Probation might be able to help him?

A. Right.

On redirect examination, Detective Brew elaborated:

Well, a lot of times when I deal with individuals I feel that are under the influence or maybe doing the crimes because of drugs, nine times out of ten, the programs are there. They just don't want to do them. However, I let them know that whatever happens, if they get into the criminal justice system, that either through the Department of Corrections, the State's Attorney's Office, the programs can be established through the courts once they are in the system. That if they want the help, it is there.

The appellant testified, on direct, as follows:

Q. What exactly did Detective Brew tell you [about drug treatment]?

A. He said he could help me get in a drug program and he would talk to the State's Attorney about it and try to, you know, get some. Because if I make a statement, he would help me out.

According to the appellant, Detective Brew got him some coffee and a candy bar; and he (the appellant) then made the apology statement, which the detective wrote out. The appellant's testimony continued:

Q. So why did you tell [Detective Brew] this [the contents of the apology statement]?

A. Like I said, he said that he could help me out and I was like, you know, giving up a statement, you know.

\* \* \*

Q. So is it your testimony that you gave him this statement because he was helpful to you and he told you that he would help you get into a program?

A. Yes, ma'am.

\* \* \*

Q. And he talked to you about drugs?

A. Yes.

Q. And he told you about different types of programs?

*A. He just said he'd talk to the State's Attorney about helping me get into a program. Instead of doing, you know, some time, you know, he would help me get into a drug program, that way I won't have to go through none of that.*

(Emphasis added.)

At the outset of cross-examination, the appellant repeated much the same thing:

Q. So did you say that [Detective Brew] promised no jail time?

A. He did say he would get me a drug program, whereas, I wouldn't have to do as much time.

Q. Where you wouldn't have to do as much time?

A. Yes, ma'am.

Q. So for all you know, the drug program could have been after ten years in jail. He didn't say anything about getting you in a drug program in place of going to jail?

A. He never specifically said it would be taking the place of going to jail, but I am saying he did say that he would help me out the best way he could.

Q. He would help you out the best way he could.

A. Yeah.

Q. But he wasn't specific in what he could do?

A. He said drug program. That's specific enough for me.

The appellant added that Detective Brew was the one who raised the subject of drug treatment, saying he "could help [the appellant] out," and that they did not discuss specific drug programs. Cross-examination concluded as follows:

Q. Did [Detective Brew] tell you that he would talk to the State's Attorney Office or Parole & Probation about a drug program?

A. He said something about he would talk to the State's Attorney about helping me out.

### The Appellant's Contentions

The appellant contends his inculpatory apology statement to Detective Brew was involuntary under Maryland common law, the Fourteenth Amendment to the Constitution of the United States, and Article 22 of the Maryland Declaration of Rights, and hence should have been suppressed. He makes three arguments in that regard.

First, the statement was involuntary under Maryland non-constitutional law because it was induced by an improper promise of a special benefit, that is, drug treatment. Second, the statement was involuntary under Maryland non-constitutional law because his intoxicated and sleep-deprived state rendered him so mentally impaired that he did not know or understand what he was saying. Relatedly, for the same reasons, his statement was not freely and willingly given under the totality of the circumstances test, and therefore was involuntary under Maryland and federal constitutional law. Finally, his statement was involuntary under federal constitutional law because he did not properly waive his *Miranda* rights, in that he was advised of the rights while in an intoxicated and sleep-deprived mental state, and, in any event, was not properly re-advised of his rights by Detective Brew, after being awakened from sleep.

### Law of Confessions

Only voluntary confessions are admissible in evidence. *Knight v. State*, 381 Md. 517, 531, 850 A.2d 1179 (2004). In order to be deemed voluntary, and hence admissible, a confession must satisfy the mandates of the Constitution of the United States, the Maryland Constitution and Declaration of Rights, the Supreme Court's decision in *Miranda v. Arizona*, and Maryland non-constitutional law. *Id.* at 532, 86 S.Ct. 1602; *Winder v. State*, 362 Md. 275, 305–06, 765 A.2d 97 (2001).

Under Maryland non-constitutional law, a confession must be " 'freely and voluntarily made at a time when [the defendant] knew and understood what he was saying.' " *Hoey*

*v. State,* 311 Md. 473, 481, 536 A.2d 622 (1988) (citation omitted). *See also Knight, supra,* 381 Md. at 531–32, 850 A.2d 1179. Similarly, in order to pass federal and Maryland constitutional muster, a confession must be voluntary, knowing, and intelligent.[3] *See generally Miranda, supra,* 384 U.S. at 444, 86 S.Ct. 1602; *Winder, supra,* 362 Md. at 305–06, 765 A.2d 97. *See also Gray v. State,* 368 Md. 529, 550, 796 A.2d 697 (2002) ("Article 22 of the Maryland Declaration of Rights has generally been recognized as being *in pari materia* with its federal counterparts"); *Lodowski v. State,* 307 Md. 233, 246–47, 513 A.2d 299 (1986) (" '[T]he privilege against compelled self-incrimination in Article 22 ... has long been recognized as being *in pari materia* with its federal counterpart' ") (citation omitted).

 Upon a proper challenge, the State bears the burden of " 'showing affirmatively that [the defendant's] inculpatory statement was freely and voluntarily made....' " *Winder, supra,* 362 Md. at 306, 765 A.2d 97 (citation omitted). If the challenge is made in a pretrial motion, "the State must establish the voluntariness of the statement by a preponderance of the evidence." *Id.*

 Ordinarily, the voluntariness of the defendant's inculpatory statement is determined based on a totality of the circumstances test:

In cases where we are called upon to determine whether a confession has been made voluntarily, we generally look at the totality of the circumstances affecting the interrogation

---

3. "The only significant difference between Maryland common law and constitutional principles may be a matter of emphasis." *Young v. State,* 68 Md.App. 121, 129 n. 2, 510 A.2d 599 (1986). This Court has explained that the Maryland common law regarding confessions developed from the view that " 'confessions involuntarily given are inherently unreliable.' " *Id.* (citation omitted). The State and federal constitutional provisions regarding confessions were designed, however, to strike a balance between "the exercise of police power [and] individual rights." *Id. See generally In Re Joshua David C.,* 116 Md.App. 580, 598 n. 4, 698 A.2d 1155 (1997) ("It has never been determined that the voluntariness standards under Maryland nonconstitutional law and federal and Maryland constitutional law are precisely the same").

and confession. We look to all of the elements of the interrogation to determine whether a suspect's confession was given freely to the police through the exercise of free will or was coerced through the use of improper means. On the non-exhaustive list of factors we consider are the length of the interrogation, the manner in which it was conducted, the number of police officers present throughout the interrogation, and the age, education and experience of the suspect. Maryland law requires that "no confession or other significantly incriminating remark allegedly made by an accused be used as evidence against him, unless it first be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary."

*Id.* at 307, 765 A.2d 97 (internal citations omitted).

When a confession is "preceded or accompanied by threats or a promise of advantage," however, those factors are "transcendent and decisive," and the confession will be deemed involuntary "unless the State can establish that such threats or promises in no way induced [it]." *Williams v. State,* 375 Md. 404, 429, 825 A.2d 1078 (2003). *See also Knight, supra,* 381 Md. at 533, 850 A.2d 1179; *Hillard v. State,* 286 Md. 145, 151, 406 A.2d 415 (1979). In *Winder, supra,* the Court of Appeals explained:

> We will deem a confession to be involuntary, and therefore inadmissible, if 1) a police officer or an agent of the police force promises or implies to a suspect that he or she will be given special consideration from a prosecuting authority or some other form of assistance in exchange for the suspect's confession, and 2) the suspect makes a confession in apparent reliance on the police officer's statement.

362 Md. at 309, 765 A.2d 97.

The first prong of this two-part standard, often called the *Hillard* test, "is an objective one. We determine whether the police or a State agent made a threat, promise, or inducement." *Winder, supra,* 362 Md. at 311, 765 A.2d 97. "The suspect's subjective belief that he or she will be advan-

taged in some way by confessing is irrelevant. The [hearing court] instead determines whether the interrogating officers or an agent of the police made a threat, promise, or inducement." *Knight, supra,* 381 Md. at 534, 850 A.2d 1179.

"An improper promise or inducement occurs when 'an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration.' " *Id.* (quoting *Winder, supra,* 362 Md. at 308, 765 A.2d 97). "Those statements that have been held to be improper inducements have involved promises by the interrogating officers either to exercise their discretion or to convince the prosecutor to exercise discretion to provide some special advantage to the suspect." *Knight, supra,* 381 Md. at 536, 850 A.2d 1179. (holding in one of two consolidated cases that interrogating officer's statement to suspect that, "if down the line, after this case comes to an end, we'll see what the State's Attorney can do for you, with your case, with your charges," was "clearly a promise to exercise advocacy on [the suspect's] behalf to convince the prosecutor to exercise discretion in [his] favor[,]" and thus was improper); *Winder, supra,* 362 Md. at 317–18, 765 A.2d 97 (holding that interrogating officer's statement that he would try to give the suspect protection from angry friends of murder victim was an improper promise); *Stokes v. State,* 289 Md. 155, 157, 423 A.2d 552 (1980) (holding that statement by interrogating officer that he would not arrest the suspect's wife was an improper promise); *Hillard, supra,* 286 Md. at 153, 406 A.2d 415 (holding that interrogating officer's statement, "[I]f you are telling me the truth ... I will go to bat for you" with the prosecutor by telling the prosecutor "that you have cooperated ..., you have told me the truth, and ... I believe you were not knowledgeable as far as the murder was concerned[,]" was an improper promise); *Streams v. State,* 238 Md. 278, 281, 208 A.2d 614 (1965) (holding that statement by interrogating officer that "it would be better for [you] if [you] made a statement because if [you] did they would try to get [you] put on probation" was an improper promise).

When an interrogating officer promises to do something that as a matter of routine is done for all suspects, there is no special consideration, and the promise therefore is not improper. *Knight, supra,* 381 Md. at 536, 850 A.2d 1179 (holding in the other of two consolidated cases that interrogating officer's promise to report suspect's cooperation to the prosecutor was not an improper promise of help or special consideration because the officer was required to so report, and thus the suspect "was to be treated exactly as any other suspect would be treated").

Exhortations to tell the truth and appeals to a suspect's inner conscience have been held not to be improper promises. *See Ball v. State,* 347 Md. 156, 176, 699 A.2d 1170 (1997) (holding that telling suspect it would be "better" if he told his story in his own words was not an improper promise). Also, the police are permitted to use some amount of subterfuge and deception in an effort to obtain a suspect's confession. *Winder, supra,* 362 Md. at 305, 765 A.2d 97.

"The second prong of the *Hillard* test triggers a causation analysis to determine whether there was a nexus between the promise or inducement and the accused's confession." *Id. See Knight, supra,* 381 Md. at 537–38, 850 A.2d 1179 (holding in the first of two consolidated cases that an interrogating officer's promise to exercise advocacy on the suspect's part with the prosecutor, although improper, did not induce the suspect's statement, which he made twice, both before and after the improper promise); *Ralph v. State,* 226 Md. 480, 486–87, 174 A.2d 163 (1961).

A "trial court's determination regarding whether a confession was made voluntarily is a mixed question of law and fact." *Knight, supra,* 381 Md. at 535, 850 A.2d 1179; *Winder, supra,* 362 Md. at 310, 765 A.2d 97. We therefore "undertake a *de novo* review of the trial judge's ultimate determination on the issue of voluntariness." *Winder, supra,* 362 Md. at 310–11, 765 A.2d 97. "Although we make our own independent appraisal ..., we will not disturb the trial court's factual findings unless those findings are clearly erroneous." *Wen-*

*gert v. State,* 364 Md. 76, 84, 771 A.2d 389 (2001). "In addition, we view the evidence in the light most favorable to the State" as the prevailing party on the motion. *In Re Joshua David C., supra,* 116 Md.App. at 592, 698 A.2d 1155. "Our review of the propriety of the trial court's denial of a motion to suppress evidence is limited to the record developed at the motions hearing." *Wengert, supra,* 364 Md. at 84, 771 A.2d 389.

### *Improper Inducement*

In the instant case, the hearing court's entire ruling on the issue of improper inducement was as follows:

> And what I heard from the Defendant's own mouth was that, yes, Detective Brew did indicate to him that he would try to assist him in getting into a drug program, but he also indicated to him—I wrote this down—he might not have to do as much time. That's what the defense said.
>
> Now, I don't know what kind of inducement that is.[4]

In other words, the hearing judge found on the first prong of the *Hillard* test that, *if he were to believe the appellant's testimony, that testimony would not support a finding that an improper promise was made.* Having so found, the hearing judge did not address the second prong of the *Hillard* test.

As the excerpts we have quoted show, the testimony at the suppression hearing about what Detective Brew said to the appellant about drug treatment was conflicting. According to the appellant, Detective Brew said that, if he gave a statement, the detective would talk to the prosecutors about getting him into a drug treatment program, implying that being in such a program would result in his not "hav[ing] to do as much time." While the appellant acknowledged that Detective Brew did not say that drug treatment would be "taking the place of going to jail," he testified that Detective Brew *did* say

---

4. The court added that giving the appellant coffee and a candy bar was not an improper inducement. The appellant does not challenge that point on appeal.

that the effect of being in such a program was that the appellant would not have to "do as much" jail time. In any event, the appellant's testimony, if fully credited, at least would show that Detective Brew made an implied promise that, in exchange for a statement, he would advocate that the prosecutor exercise discretion in favor of the appellant's receiving a more lenient sentence than he otherwise would.

Detective Brew, on the other hand, maintained that he merely was letting the appellant know that drug treatment programs could be available to him, as they are for others who become a part of the "criminal justice system," and that he would talk to the prosecutors or DOC officials who run the programs about the appellant's receiving drug treatment during incarceration.

The hearing judge did not resolve the conflict in the testimony. He merely recounted what the appellant's testimony had been—that Detective Brew indicated that he would try to assist him in getting into a program and he might not have to serve as much time—and concluded that that could *not* constitute an improper promise of a benefit, under the first prong of the *Hillard* test. We disagree. If fully credited, the appellant's testimony established that his inculpatory apology statement followed an improper promise by Detective Brew.

A police officer's express or implied assertion that a suspect will be given leniency in prosecution or sentencing if he makes a statement is a promise of a special benefit or consideration. In *Johnson v. State*, 348 Md. 337, 347, 703 A.2d 1267 (1998), the defendant was arrested and taken to a state trooper barracks for questioning in connection with a murder. The interrogating trooper told him that if he confessed, he "might be able to receive some sort of medical treatment" at a hospital for the criminally insane instead of "being locked up for the rest of [his] life." *Id.* at 348, 703 A.2d 1267. That day and the next, the defendant confessed to other crimes, but not the murder. On the fourth day, after being transferred to a correctional facility and asking to speak to authorities, the defendant confessed to being at the murder

scene. The trial court found that the statements made during the first two days were involuntary, as the products of improper promises of a benefit, but ruled the confession made on the fourth day was admissible, on the ground that it was not caused by the improper promises (*i.e.*, did not satisfy the second prong of the *Hillard* test).

In affirming that decision, the Court of Appeals tacitly recognized that the trooper's suggestion that, if the defendant confessed, he could avoid prison time by instead being committed to a hospital for mental health treatment was a promise of help or special consideration that was improper (under the first prong of the *Hillard* test). *See also State v. Anderson*, 404 N.W.2d 856, 858 (Minn.Ct.App.1987) (affirming trial court's decision to suppress defendant's confession upon finding that police officer told defendant that if he confessed they would arrange drug treatment in lieu of prosecution); *cf. McCarthy v. Bronson*, 683 F.Supp. 880, 884–86 (D.Conn.1988) (tacitly acknowledging that a promise of drug treatment as an alternative to incarceration may be improper but holding that the totality of the circumstances supported the trial court's determination that no such inducement occurred).

In the case *sub judice*, the hearing court's sole finding, that the appellant's testimony, if credited, could not show that Detective Brew made an improper promise of a special benefit, was incorrect. If Detective Brew directly or indirectly promised the appellant that, in exchange for making a statement, he (the detective) would recommend to the prosecuting authorities that the appellant be put in a drug treatment program so he would serve less jail time than he otherwise would serve, that was a promise to advocate leniency in sentencing on the appellant's behalf, under the objective first prong of the *Hillard* test. Such a promise is analogous to the promise to advocate for probation in lieu of jail time that the Court of Appeals held improper in *Streams*.

The appellant argues, based on the faulty assertion that the hearing judge found that Detective Brew offered to assist the appellant in obtaining drug treatment in prison, that such a

finding necessarily established that an improper promise was made. As we have explained, the hearing judge made no findings, other than to conclude that the appellant's testimony, if credited, would not show an improper promise.[5]

 In any event, mere evidence of an offer by an interrogating officer to recommend to prosecuting or prison authorities that a suspect receive drug treatment, while in prison, unconnected to any promise of leniency in prosecution or sentencing, or to advocate for such leniency, is not in and of itself an improper promise of a benefit or special advantage. In *Facon v. State*, 144 Md.App. 1, 25, 796 A.2d 101 (2002), *rev'd on other grounds*, 375 Md. 435, 825 A.2d 1096 (2003), the interrogating officer testified at a suppression hearing that, before the defendant made an incriminating statement, the officer talked to him about his serious drug habit and the benefits of drug treatment, and told him he would tell the State's Attorney about the problem, although he was not making any promises that he would receive treatment. The defendant testified but did not controvert that aspect of the officer's testimony; he acknowledged that the officer was not promising him drug treatment. His testimony primarily was that he had not made any statement at all. Affirming the denial of the motion to suppress, this Court held that the uncontroverted evidence that the officer said he would make a recommendation to the prosecutor for drug treatment was not an improper promise of a benefit or special consideration under *Hillard*.

Other courts that have addressed this issue have concluded likewise. In *United States v. McClinton*, 982 F.2d 278 (8th Cir.1992), the defendant argued on appeal from convictions for abducting young girls that interrogating officers had improperly induced his confession by promising, among other things,

---

**5.** Just as the appellant asserts, incorrectly, that the hearing court found that Detective Brew made a promise to advocate that the appellant receive drug treatment, the State incorrectly asserts that the hearing court found Detective Brew's testimony to be credible. We already have recited the entirety of the hearing court's findings on the issue of improper inducement.

drug and alcohol treatment. The officers acknowledged during the suppression hearing that, "in an effort to develop a general rapport with [the defendant], they told him he was not a bad person and that he would receive help for his drug and alcohol problems if he talked to them." 982 F.2d at 283. Affirming the conviction, the appellate court held that the promises to help the defendant with "his collateral health problems," *i.e.*, drug and alcohol abuse, were "far different from promises in leniency in the criminal proceeding." *Id. See also Coates v. State,* 534 N.E.2d 1087 (Ind.1989) (holding that police officer's offer to try to arrange drug or alcohol treatment for the defendant did not render the defendant's subsequent confession involuntary). *Cf. State v. Miller,* 316 N.W.2d 23 (Minn.1982) (holding that interrogating officers did not coerce confession by telling the defendant they would try to get him psychiatric help if he was the person who committed the crime, in the absence of any promise of leniency in prosecution or evidence that they were deceiving him).

In the case at bar, it was uncontroverted that the drug treatment the appellant and Detective Brew talked about consisted of programs available in prison for offenders who already are incarcerated "in the criminal justice system." Drug treatment in this context is akin to medical treatment routinely accessible to prisoners, and is not a special advantage or benefit. An offer to recommend to the authorities running the program that the appellant receive treatment, while an offer of assistance, is not an offer to advocate for a special advantage.[6] Thus, if fully credited, Detective Brew's

---

6. The dissent likens the alleged promise in this case to those in *Hillard, Knight, Streams,* and *Winder.* The promises in *Hillard* and *Knight* were improper because they stated or implied that the interrogating officer would advocate on the defendant's behalf with respect to *charges* being brought or continued against him. The promise in *Streams* was to advocate probation over prison time. Thus, these three cases all involved promises to advocate for leniency in prosecution or sentencing, *i.e.,* special treatment of the defendant in those areas. *Winder* involved a promise by the interrogating officer to give the defendant protection from physical harm that might be perpetrated against him by relatives of the murder victim. The promise was improper in part

testimony would establish only an offer to recommend the appellant for drug treatment generally available to those incarcerated by the criminal justice system, not a special benefit, and hence would not show an improper promise.

To decide whether an improper promise of help or special consideration was made, under the first prong of the *Hillard* test, then, the hearing court needed to resolve the factual dispute between the appellant and Detective Brew about what was said about drug treatment during the interrogation and make a finding. It did not do so, and this Court is in no position to do so. The conflict in the evidence only can be resolved by assessing the credibility of the witnesses and weighing their testimony, something we cannot do, nor should we. We find ourselves with a critical conflict in the evidence and no factual finding by the hearing court.

In the absence of a factual finding about what Detective Brew said to the appellant about drug treatment during the interrogation, we are unable to make in independent appraisal of whether Harper's confession was voluntary, under the *Hillard* test.

In *Lodowski v. State, supra*, the Court of Appeals held that, when the record is not sufficient for the appellate court to make an independent constitutional appraisal of whether a defendant's statement was voluntary, and therefore was properly allowed into evidence, because critical conflicts in the evidence were not resolved by factual findings, the judgment must be reversed and the case remanded for a new suppression hearing and a new trial. 307 Md. at 257–58, 513 A.2d 299. In *Lodowski*, the hearing court made a single factual finding on an issue separate from the voluntariness of confession issue, and did not resolve any of the conflicts in the evidence that were important to that issue. The Court, in holding the record would not permit appellate review of the voluntariness of the defendant's confession, observed: " 'This is not a case

---

because it was a veiled threat. The promises in *Hillard, Knight, Streams,* and *Winder* do not support a conclusion that the promise in this case, as testified to by Detective Brew, was improper.

where the facts concerning the circumstances surrounding the confession are undisputed and the task is only to judge the voluntariness of the confession based upon the clearly established facts and in accordance with proper constitutional standards.'" 307 Md. at 252, 513 A.2d 299 (quoting *Jackson v. Denno,* 378 U.S. 368, 391, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)).

In the case at bar, because we cannot on this record conduct an independent appraisal of whether the appellant's inculpatory apology was induced by an improper promise, we shall reverse the judgments and remand the case for further proceedings. The court should conduct a new hearing on the suppression motion, resolve the factual conflicts with findings, and determine whether Detective Brew made an improper promise to the appellant; and, if so, whether the appellant's apology statement was induced by the improper promise. *See, e.g., State v. McColl,* 74 Conn.App. 545, 565–66, 813 A.2d 107 (2003) (affirming trial court's denial of suppression motion upon finding by hearing court that detective promised suspect a drug treatment program instead of incarceration but further finding that the suspect cooperated with the police because he wished to receive drug treatment and not because of the detective's promise). Regardless of the outcome of the hearing, the appellant is entitled to a new trial. *Lodowski,* 307 Md. at 258, 513 A.2d 299.

### The Appellant's Mental State

The appellant maintains that the evidence about his mental state at the time he made the inculpatory apology statement showed that he was so mentally impaired that his statement could not have been voluntarily given, under Maryland non-constitutional law, and that, for this reason, we should hold that the statement was involuntary. We disagree.

"The first step in determining whether a confession is voluntary under Maryland nonconstitutional law is to determine whether the defendant was mentally capable of making a confession." *Hoey, supra,* 311 Md. at 481, 536 A.2d

622. "[A] defendant's mere mental deficiency is insufficient to automatically make his confession involuntary. Rather, a confession is only involuntary when the defendant, at the time of his confession, is so mentally impaired that he does not know or understand what he is saying." *Id.* at 482, 536 A.2d 622 (upholding trial court's determination, based on conflicting evidence as to mental capacity of schizophrenic defendant at time of defendant's confession, that defendant's confession was voluntary).

"[M]ental impairment from drugs or alcohol does not *per se* render a confession involuntary." *Hof v. State,* 337 Md. 581, 620, 655 A.2d 370 (1995). "[W]hether the defendant was under the influence of a drug at the time of giving the incriminating statement is a factor to be considered in determining the voluntariness of that statement." *Id.* (citing *Townsend v. Sain,* 372 U.S. 293, 307–08, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). "[A] court may admit a confession into evidence if it concludes that it was freely and voluntarily made despite the evidence of mental impairment." *Id.* at 620–21, 655 A.2d 370 (further citing *Dempsey v. State,* 277 Md. 134, 154, 355 A.2d 455 (1976) (holding that evidence of the defendant's drinking and intoxication was sufficient to raise a jury question as to the voluntariness of his confession); *Campbell v. State,* 240 Md. 59, 64, 212 A.2d 747 (1965) (holding that, while defendant probably was under the influence of narcotics at the time of his confession, that "d[id] not of itself make the confession not free and voluntary"); *Bryant v. State,* 229 Md. 531, 535, 185 A.2d 190 (1962) (same)). *See also Wiggins v. State,* 235 Md. 97, 101–02, 200 A.2d 683 (1964) (upholding trial court's determination that defendant's confession and statement were voluntary although made while defendant was suffering from alcohol withdrawal, and stating that "[t]he crucial question was not whether he was suffering from the effects of withdrawal from excessive alcoholic indulgences when he gave them, but whether his disclosures to the police were freely and voluntarily made at a time when he knew and understood what he was saying"); *McCray, supra,* 122 Md.App. at 616, 716 A.2d 302 (upholding trial court's determination that defendant's state-

ment to law enforcement officer was voluntary, despite defendant's intoxication at the time, when evidence presented at the hearing was sufficient to allow the court to conclude that defendant "understood 'what was going on around her'" and "was mentally capable of understanding what she was saying").

According to Detective Brew, although the appellant obviously was under the influence of something, he seemed to understand what was being said to him and responded appropriately. The appellant earlier had told Detective Rogers that he had smoked two "blunts" and consumed one beer sometime before 5:00 p.m. on the day of his arrest. At the point when Detective Brew began speaking with him, the appellant had been at the police station for nearly four hours and had gotten some sleep.

Although the appellant claimed at the hearing that he had been under the influence of marijuana, alcohol, and cocaine when he was interviewed by Detective Brew, and that he was sleep deprived, there was evidence that he was able to recount in great detail what transpired at the police station. The appellant recalled, among other things, signing the "Advice of Rights Form," speaking to Detective Rogers, receiving coffee and candy from Detective Brew, and giving a general apology for "any inconvenience [he] may have caused anybody." Significantly, throughout the interrogation, the appellant had the presence of mind to consistently use the name "Francis McClain" instead of his real name, so as to avoid being arrested for violating his probation.

As the hearing court explained in denying the motion to suppress:

[G]iven [the appellant's] recollection of the events that occurred, and he seemed to have a very clear recollection of the events that occurred, I think that the statement was given knowingly.

He clearly understood what was going on there. He may have been under the influence of drugs and may have been trying to go to sleep on a number of occasions as Detective

Brew said, but he clearly knew what was going on. He almost recited word for word what Detective Brew said went on during the proceeding.

The appellant's intoxicated mental state was one factor in the totality of the circumstances pertaining to voluntariness. His sleepiness was another. Given the evidence of his awareness and understanding of what was said during the interview as reflected by his level of recall; that the appellant was arrested in the late afternoon, not during normal sleeping hours, as he was sitting in a public place; and that his statement was made within five and one-half hours of his arrest, the hearing judge's finding that the appellant was mentally aware when he made his statement was not clearly erroneous. We are satisfied that the appellant's mental state at the time of the interrogation was not such as to have, in and of itself, rendered his statement involuntary.

### Violation of Miranda

The appellant's argument that his statement to Detective Brew was involuntary because the dictates of *Miranda* were not met is not properly before this Court, because it was not made or decided below. Accordingly, the argument has been waived. *See* Md. Rule 8–131(a). As the Court of Appeals has explained:

> The burden upon the State to establish affirmatively the admissibility of the confession or admission arises [only] upon proper objection.... The requirement of a proper challenge applies to both aspects of admissibility-constitutional voluntariness and compliance with *Miranda's* prophylactic safeguards. Fundamental rights can be waived by an accused, . . . and the right to a hearing and determination by the trial judge of the admissibility of a confession or admission provides no exception.

*State v. Kidd,* 281 Md. 32, 38, 375 A.2d 1105 (1977) (citations omitted).

Had the argument been properly preserved, however, we would find it to be without merit. *"Miranda* im-

presse[s] procedural safeguards on the traditional test of voluntariness." *Id.* at 36, 375 A.2d 1105. "The police must warn any person subjected to custodial interrogation that he has a right to remain silent, that any statement he does make may be used in evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *State v. Tolbert,* 381 Md. 539, 549, 850 A.2d 1192, *cert. denied,* ── U.S. ──, 125 S.Ct. 263, 160 L.Ed.2d 85 (2004). "The defendant may waive effectuation of the *Miranda* safeguards, provided the waiver is made voluntarily, knowingly and intelligently...." *Kidd,* 281 Md. at 37, 375 A.2d 1105.

For the same reasons that we rejected the appellant's assertion that his mental state necessarily rendered him incapable of making a voluntary statement, we would reject, if preserved, his assertion that he lacked the "mental capacity" to waive his *Miranda* rights. The hearing court found that the appellant was well aware of what was transpiring at the police station, and the record of the suppression hearing amply supports that determination. *See, e.g., Clark v. State,* 140 Md.App. 540, 581–84, 781 A.2d 913 (2001) (upholding trial court's determination that defendant was capable of waiving *Miranda* rights despite mental illness).

▮▮▮▮▮ Nor would we be persuaded by the appellant's assertion that Detective Brew was required to re-advise him of his rights before conducting the interview. In determining whether a defendant should have been re-advised, courts look to the totality of the circumstances. *See Tolbert,* 381 Md. at 551, 850 A.2d 1192. We consider such factors as:

> "(1) the length of time between the giving of the first warnings and the subsequent interrogation ...; (2) whether the warnings and the subsequent interrogation were given in the same or different places ...; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers ...; (4) the extent to which the subsequent statement differed from any previous statements ...; (5) the apparent intellectual and emotional state of the suspect."

*Id.* at 553, 850 A.2d 1192 (citation omitted) (setting forth non-exhaustive list).

The record of the suppression hearing in the instant case establishes that the appellant was taken to the police station at about 5:00 p.m. and was placed in an interview room. Detective Rogers advised him of his rights and obtained his initials and signature on an advice of rights form at about 6:45 p.m. She spoke briefly with the appellant and then left him alone in the interview room. At 8:45 p.m., Detective Brew entered the interview room, woke the appellant, and conducted an interview. Only two hours elapsed between the advisement of rights and Detective Brew's interrogation. During that time, the appellant remained in the same room. He was not interrogated by multiple officers. Although he appeared to be under the influence of alcohol or drugs, the hearing court was satisfied that "[h]e clearly understood what was going on there." The totality of the circumstances did not require that the appellant be re-advised of his *Miranda* rights.[7]

## II.

The appellant's false statement conviction was based upon his using an alias when he was apprehended and questioned by the police. He contends that the trial court erred by refusing to sever that count—Count Four—from the counts related to the robbery. He posits that "[t]he evidence presented for Counts One through Three would not have been admissible at a trial on the false statement, and vice-versa."

The appellant directs this Court to a generic, omnibus motion filed prior to the suppression hearing and trial, by which counsel vaguely moved, among other things, "to sever the trial of his case from that of his co-defendants and/or sever counts." Counsel did not specify in the motion which count or counts should be severed. The appellant provides us with no

---

7. In this opinion, with respect to the mental state and *Miranda* issues, we merely are rejecting the appellant's argument that the facts adduced at the hearing compelled a finding of involuntariness. We are not commenting, nor could we, about the proper resolution of those issues if additional evidence about them is adduced at the new hearing.

citation to the record of the suppression hearing or trial that would indicate that the amorphous motion to sever was ever pursued. The docket entries do not reflect a ruling on the motion, and there is no indication that a ruling was sought. Under the circumstances, the matter was not raised in or addressed by the trial court and therefore is not properly before this Court for review. *See* Md. Rule 8–131(a). *See also White v. State*, 23 Md.App. 151, 156, 326 A.2d 219 (1974) (holding that speedy trial issue was waived when motion to dismiss for lack of speedy trial was "obscurely situate[d]" in written motion and defense never brought lack of ruling on matter to trial court's attention, despite opportunity to do so).

In any event, we shall address the issue because it is likely to arise on remand.

Under Md. Rule 4–253(c):

If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

As the Court of Appeals has explained:

[T]he analysis of jury trial joinder issues may be reduced to a test that encompasses two questions: (1) is evidence concerning the offense or defendants mutually admissible; and (2) does the interest in judicial economy outweigh any other arguments favoring severance? If the answer to both questions is yes, then joinder of offenses or defendants is appropriate. In order to resolve question number one, a court must apply the first step of the "other crimes" analysis announced in [*State v.*] *Faulkner* [, 314 Md. 630, 552 A.2d 896 (1989) ]. If question number one is answered in the negative, then there is no need to address question number two. . . .

*Conyers v. State*, 345 Md. 525, 553, 693 A.2d 781 (1997).

Decisions regarding the joinder or severance of charges for trial are committed to the sound discretion of the

trial court. This Court "will only reverse a trial judge's decision ... if the decision was a clear abuse of discretion." *Id.* at 556, 693 A.2d 781.

 "Evidence of other crimes may be admitted ... if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896 (1989). Such evidence may be deemed substantially relevant if it tends to establish motive, intent, a common scheme or plan, identity, opportunity, preparation, knowledge, absence of mistake, or accident. *Id.* It must be "clear and convincing," and its probative value must outweigh its prejudicial effect. *Id.* at 634–35, 552 A.2d 896.

Evidence that the appellant used a false name when questioned by police about the robbery outside Arrowhead Elementary School is relevant in a trial concerning the robbery and related counts to establish he had knowledge of those offenses. *See Stuckey v. State,* 141 Md.App. 143, 174, 784 A.2d 652 (2001) (evidence that defendant used false name relevant to show consciousness of guilt). Evidence regarding the robbery would be relevant in a trial concerning the making of a false statement to establish the motive for making the statement. The appellant offers no persuasive argument that in either situation the evidence would be unduly prejudicial. Accordingly, it would not be an abuse of discretion to deny a motion to sever.

**JUDGMENTS REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

Concurring/Dissenting opinion by DAVIS, J.

Most respectfully, I must dissent from the Majority opinion's determination that appellant's confession was voluntary. We are instructed by the Court of Appeals, in *Winder v. State,* 362 Md. 275, 309, 765 A.2d 97 (2001), and *Hillard v. State,* 286

Md. 145, 406 A.2d 415 (1979), that a confession made in reliance on an improper promise of assistance by an interrogating officer or an agent of the police always will be deemed involuntary under Maryland and non-constitutional common law. *Winder* explains that "an improper promise or inducement" occurs when "an accused is told, or it is implied, that making an inculpatory statement will be to his advantage, in that he will be given help or some special consideration." 362 Md. at 308, 765 A.2d 97.

"The trial court's determination regarding whether a confession was made voluntarily is a mixed question of law and fact." *Winder*, 362 Md. at 310–11, 765 A.2d 97. An appellate court undertakes a *de novo* review of the trial judge's ultimate determination on the issue of voluntariness. *Id.* We do not look, however, at the trial record for additional information, nor do we engage in *de novo* fact-finding. *Cartnail v. State*, 359 Md. 272, 279, 753 A.2d 519 (2000). Appellate review of a circuit court's denial of a motion to suppress is limited to the record of the suppression hearing. *Winder*, 362 Md. at 310–11, 765 A.2d 97. As the State was the prevailing party on the motion, we consider the facts as found by the trial court, and the reasonable inferences from those facts, in the light most favorable to the State. *Cartnail*, 359 Md. at 282, 753 A.2d 519.

In *Knight v. State*, 381 Md. 517, 850 A.2d 1179 (2004), the interrogating officer made the following statement: "[I]f down the line, after this case comes to an end, we'll see what the State's Attorney can do for you, with your case, with your charges[.]" 381 Md. at 537, 850 A.2d 1179. The Court of Appeals, referring to footnote 14 of the opinion, held this statement to be an improper inducement. Footnote 14 had chronicled statements held to be inducements in prior decisions: "I can make you a promise, Okay? I can help you. I could try to protect you." *Winder*, 362 Md. at 289, 765 A.2d 97; "If you're telling me the truth ... I will go to bat for you." *Hillard*, 286 at 153, 406 A.2d 415; "It would be better for [you] if [you] make a statement because if [you] did they would try to get [you] put on probation." *Streams v. State*,

238 Md. 278, 281, 208 A.2d 614 (1965). Certainly, reference to disposition of a suspect's "case" or "charges" graphically induces one to be compliant, but, as I read *Knight*, the emphasis there was on the officer assuming the role of advocate, much like legal counsel would advocate for a client.

At the outset, I do not take issue with any of the decisional authority cited by the Majority. Were it within our purview to credit appellant's testimony on the motion, his rendition of what occurred, i.e., that he would receive help in getting into a program and Detective Brew would help him get into a program instead of doing some time, would certainly have constituted an inducement. Keeping in mind that, upon appellate review, we do not engage in *de novo* fact-finding and, as the Majority points out, the motions court did not find appellant's testimony credible, his version of what occurred is of no moment. That leaves us, then, with the testimony of Detective Brew. Considering his testimony in the light most favorable to the State, in my view, it held out at least an expectation that Detective Brew would go to bat for appellant. A promise will be deemed an inducement if it was made explicitly or implicitly; it need not be expressed.

In the case at hand, Detective Brew was asked on cross-examination, "And did you say that you could help him with that?" (Referring to his earlier statement that, "I think I said that we might be able to get him some through the State's Attorney or Parole and Probation or that the programs are run through them.") Detective Brew had indicated that he "couldn't do it, but might be able to through the State's Attorney." The majority opinion seeks to ameliorate the effect of Detective Brew's testimony by asserting that, taken in context, the statement is no more than information regarding the agencies that are responsible for administering drug treatment programs.

The critical language from *Knight* as it is relevant here is:

If the court concludes that the confession was made in reliance on an improper inducement, the confession may not

be admitted as evidence at trial. (citing *Winder,* 362 Md. at 309, 765 A.2d 97)

The first prong of the *Hillard* test is an objective one. The suspect's subjective belief that he or she will be advantaged in some way by confessing is irrelevant. The trial court instead determines whether the interrogating officers or an agent of the police made a threat, promise, or inducement. *Winder,* 362 Md. at 311, 765 A.2d. at 116. An improper promise or inducement occurs when "an accused is told, *or it is implied,* that making an inculpatory statement will be to his advantage, in that *he will be given help* or some special consideration." 362 Md. at 308, 765 A.2d at 115.

As noted previously, we undertake a *de novo* review of the trial judge's ultimate determination on the issue of voluntariness. *Winder,* 362 Md. at 310–11, 765 A.2d 97. Detective Brew attempted to refine his earlier testimony by adopting the substance of the prosecutor's question, "But you told them that the State's Attorney or Parole and Probation might be able to help him," by saying, *"I could talk to them about that, for him to get into a program."* That, in my view, constitutes a promise, under *Knight,* that he "will be given help." More to the point, the Court of Appeals in *Knight* found the statement under consideration to be an inducement because it "was clearly a promise to exercise advocacy on Knight's behalf to convince the prosecutor to exercise discretion in Knight's favor." *Id.* at 537, 850 A.2d 1179. Moreover, according to Detective Brew's testimony, he did not advise appellant that the drug treatment program would be available to him after conviction or in conjunction with, rather than instead of, incarceration.

The law is clear that the voluntariness of a confession is vitiated by an improper inducement, in order to obtain a confession, without more. In my judgment, when Detective Brew testified that he advised appellant that he could "talk to them about that, for him to get into a program," he assumed the role of an advocate, thereby rendering his statement an inducement rather than simply an indication that he would

report the circumstances of the interrogation to the prosecutor. I see very little difference between Detective Brew's offer of assistance that "We might be able to get him some through the State's Attorney or Parole and Probation," and the statement in *Streams* that, if the accused made a statement, "they would try to get you put on probation." In both instances, there is at least an implicit suggestion that assistance in obtaining drug treatment or in getting on probation would be forthcoming if the suspect cooperated by giving a statement.

Because I believe, on remand, the lower court can only find that appellant, at least tacitly, was led to believe giving a statement would result in Detective Brew acting on his behalf as an advocate or sponsor for his acceptance in a drug program, I would conclude, on the present record, that the statement is not voluntary.